[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 392.]

FORT FRYE TEACHERS ASSOCIATION, OEA/NEA, ET AL., APPELLEES AND
CROSS-APPELLANTS, *v.* STATE EMPLOYMENT RELATIONS BOARD ET AL.,
APPELLANTS AND CROSS-APPELLEES.
[Cite as *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*,
1998-Ohio-435.]

*Schools—Teachers—Unfair labor practices—State Employment Relations
Board—School board barred by doctrine of collateral estoppel from
relitigating issue of its motivation in nonrenewing a teacher's limited
teaching contract, when—Application of collateral estoppel does not
infringe upon SERB's exclusive jurisdiction to decide whether unfair labor
practices have occurred.*

(No. 96-2642—Submitted January 13, 1998—Decided April 22, 1998.)

APPEALS and CROSS-APPEAL from the Court of Appeals for Washington County,
No. 95CA33.

————————————

{¶ 1} Appellee Michael Rauch was employed by the appellant Fort Frye
Local School District Board of Education ("School Board") as a high school
industrial arts teacher under two separate one-year limited teaching contracts from
1986 until 1988. While so employed, Rauch was a member of the appellee Fort
Frye Teachers' Association ("Union"), the exclusive bargaining representative for
the certificated staff.

{¶ 2} In 1987, the collective bargaining agreement between the Union and
the School Board was up for renegotiation. Dissatisfied with the School Board's
final offer, the Union decided to strike on October 19, 1987. Rauch was a staunch
supporter and served as a co-captain of the picket line during the strike.

**{¶ 3}** On November 2, 1987, the School Board reopened the schools with replacement substitute teachers and Fort Frye teachers who crossed the picket line. On November 16, 1987, an agreement was reached on terms which closely approximated the final offer of the School Board before the strike began. The Union felt it had lost. Many striking teachers believed that the teachers who crossed the picket line caused this defeat. To show their solidarity, several striking teachers informally agreed to ostracize the nonstriking teachers by refusing to socialize with them upon their return to work.

**{¶ 4}** In addition to the ostracism, the School Board also received several reports of unprofessional conduct on the part of Rauch. Specifically, it was alleged that Rauch had harassed several teachers and two students. Nonstriking teachers and community members called for the nonrenewal of Rauch's contract. After receiving these complaints, the School Board's superintendent notified Rauch that he was recommending that the School Board nonrenew Rauch's contract for the following year due to his attitude and conduct.[1] On April 21, 1988, the School Board accepted the superintendent's recommendation and declined to renew Rauch's limited teaching contract upon its termination at the end of the 1987-1988 school year.

**{¶ 5}** On April 22, 1988, the Union filed an unfair labor practice charge ("ULP") against the School Board with appellant State Employment Relations Board ("SERB") on Rauch's behalf. The Union alleged that the School Board nonrenewed the employment contract of Rauch in retaliation for engaging in activities protected under R.C. Chapter 4117.

**{¶ 6}** SERB found probable cause to believe a ULP had occurred and a complaint was issued against the School Board. After conducting an evidentiary

---

1. According to the terms of the collective bargaining agreement, the School Board could nonrenew the limited contracts of teachers with less than four years of experience without establishing just cause for their termination.

hearing, a SERB hearing officer found a ULP. SERB disagreed with its hearing officer's recommendation and entered judgment in the School Board's favor. On July 22, 1991, appellees appealed to the common pleas court. In addition, on August 20, 1991, Rauch filed a complaint in federal court against the School Board, alleging a violation of his constitutional right of freedom of association.

{¶ 7} On July 30, 1992, a federal jury returned a general verdict in Rauch's favor. The School Board filed a motion for judgment notwithstanding the verdict, which was denied. The School Board then appealed, but later dismissed its appeal in July 1993.

{¶ 8} Meanwhile, the state action proceeded. On January 12, 1993, the common pleas court affirmed SERB's decision. Appellees appealed. The court of appeals did not address the merits of the appeal. Instead, it reversed and remanded the case to SERB for a consideration of this court's decision in *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.* (1993), 66 Ohio St.3d 485, 613 N.E.2d 605, which held that R.C. Chapter 4117 mandates the application of the "in part" test in order to determine the motivation of an employer charged with a ULP.[2]

{¶ 9} SERB ordered the parties to submit additional briefs addressing the "in part" standard. In their additional brief, appellees argued that the School Board was collaterally estopped by the federal jury verdict from contesting the issue of its motivation under the *Adena* standard.

{¶ 10} SERB rejected the appellees' argument, applied the *Adena* standard, and again failed to find a ULP. Upon appeal, the common pleas court agreed.

---

2. Under the "in part" test, the proponent of the ULP has the initial burden of showing that the action by the employer was taken to discriminate against the employee for the exercise of rights protected by R.C. Chapter 4117. Where the proponent meets this burden, a prima facie case is created that raises a presumption of antiunion animus. The employer is then given an opportunity to present evidence that its actions were the result of other conduct by the employee not related to protected activity, to rebut the presumption. SERB then determines, by a preponderance of the evidence, whether a ULP has occurred. *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.* (1993), 66 Ohio St.3d 485, 613 N.E.2d 605, paragraph two of the syllabus.

However, the court of appeals reversed and remanded. The court agreed with appellees' position and held that upon remand, the School Board is collaterally estopped by the jury verdict in federal court from contesting the issue of its motivation with regard to alleged violations of R.C. Chapter 4117.

{¶ 11} The cause is now before us pursuant to the allowance of discretionary appeals and a cross-appeal.

———————————

*Cloppert, Portman, Sauter, Latanick & Foley, Mark A. Foley, Susan Hayest Kozlowski* and *William J. Steele,* for appellees and cross-appellants.

*Betty D. Montgomery,* Attorney General*,* and *Peter M. Thomas*, Assistant Attorney General, for appellant and cross-appellee State Employment Relations Board.

*Whalen & Compton Co., L.P.A., G. Frederick Compton, Jr., R. Brent Minney* and *Craig A. Robinson,* for appellant and cross-appellee Fort Frye Local School District Board of Education.

———————————

**FRANCIS E. SWEENEY, SR., J.**

{¶ 12} The issue presented in this case is twofold. First, we must decide whether the School Board is barred by the doctrine of collateral estoppel from relitigating the issue of its motivation in nonrenewing Rauch's limited teaching contract. Second, we must determine whether the application of collateral estoppel infringes upon SERB's exclusive jurisdiction to decide whether unfair labor practices have occurred. Because we find that collateral estoppel applies and that this decision does not invade SERB's exclusive jurisdiction, we affirm the court of appeals and remand the matter to SERB for further proceedings consistent with this opinion.

{¶ 13} It has long been held that the legal doctrine of *res judicata* consists of two related concepts—claim preclusion and issue preclusion. *Grava v. Parkman*

*Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226, 228. Although not at issue here, the claim preclusion concept holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Id.* at syllabus.

{¶ 14} The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph three of the syllabus; *Trautwein v. Sorgenfrei* (1979), 58 Ohio St.2d 493, 12 O.O.3d 403, 391 N.E.2d 326, syllabus; *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, paragraph one of the syllabus. While the merger and bar aspects of *res judicata* have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437-438, 254 N.E.2d 10, 13. "In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." *Id.* at 112, 49 O.O.2d at 438, 254 N.E.2d at 13.

{¶ 15} Appellants contend that certain collateral estoppel requirements were not met. First, we note that there is no disagreement that the federal district court is a court of competent jurisdiction. However, the School Board contends

that the prior[3] federal action did not involve the same parties or their privies because SERB was not a party to the federal lawsuit. We reject this argument.

{¶ 16} In determining whether there is privity of parties, "a court must look behind the nominal parties to the substance of the cause to determine the real parties in interest." *Trautwein,* 58 Ohio St.2d at 501, 12 O.O.3d at 407, 391 N.E.2d at 331. That is, we must consider which party estoppel is being asserted against.

{¶ 17} In both the state and federal action, Rauch and the School Board have been adversaries. SERB, however, has played a unique role. SERB is the administrative agency responsible for deciding public-sector labor relations disputes pursuant to R.C. Chapter 4117. *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 170, 572 N.E.2d 87, 90. Thus, in accordance with R.C. Chapter 4117, and depending upon the posture of the case, SERB has aligned itself with both Rauch and the School Board.[4] Since SERB's authority is limited to state administrative claims, SERB could not be a party to a federal action alleging a federal constitutional violation. However, the fact that SERB was not involved in the federal action is immaterial. The real parties in interest (Rauch and the School

---

3. The School Board argues that the federal action should not be considered as the prior action because the SERB action began years before the federal action. This argument is rejected. When two actions are pending that involve the same issue, it is the final judgment first rendered in one of the actions that becomes conclusive in the other action, regardless of which action was commenced first. 1 Restatement of the Law 2d, Judgments (1982) 142, Section 14, comment *a*. When the School Board dismissed its appeal to the Sixth Circuit Court of Appeals in July 1993, the federal proceeding became final. This appeal, involving the SERB proceeding, demonstrates that the state proceeding is yet to be final.

4. For instance, at the state level, the Union, on Rauch's behalf, filed a ULP charge with SERB against the School Board. SERB investigated the charge and found probable cause to believe that the School Board had committed a ULP. Then SERB, as complainant, filed a complaint against the School Board. Rauch and the Union were granted permission to intervene as interested parties. A SERB hearing officer recommended that SERB find that a ULP was committed. However, when SERB rejected this recommendation and dismissed the charge, SERB allied itself with the School Board on the subsequent appeal. When the case was remanded to SERB, SERB allied itself with Rauch. Later, when the charge was again dismissed, SERB was again allied with the School Board when Rauch appealed that determination.

Board) have remained the same. These are the parties whose interests were implicated by the federal action and the ULP charge. Thus, the party against whom estoppel is sought (the School Board) was a party to the prior action.

{¶ 18} The more difficult question is whether the same facts used to support the civil rights violation are the same facts to sustain a ULP charge. If the same evidence would sustain both issues, then the two issues are the same for purposes of applying collateral estoppel. *Norwood,* 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph four of the syllabus. We find the evidence is the same.

{¶ 19} In their federal action, appellees sought damages for the School Board's violation of Rauch's freedom of association rights. The material issue was whether the School Board nonrenewed Rauch's contract in retaliation for his exercise of the right to associate as protected by the First Amendment to the United States Constitution. The underlying facts substantiating the School Board's retaliatory motive centered around Rauch's union activities. The test for determining whether a violation of First Amendment rights, including associational rights, has occurred is found in *Mt. Healthy City School Dist. Bd. of Edn. v. Doyle* (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471. This case sets forth a "but for" test for establishing that an employee's exercise of First Amendment rights was violated by employer retaliation.[5] This standard is a much stricter standard than Ohio's standard to determine whether an unfair labor practice charge has occurred. (See *Adena*, 66 Ohio St.3d at 495-497, 613 N.E.2d at 613-614, where we rejected the *Mt. Healthy* "but for" test applicable to First Amendment rights and established the "in part" test applicable to unfair labor practice proceedings. However, both standards revolve around the same factual issue, the employer's motivation.)

---

5. The United States Supreme Court determined that once the plaintiff establishes that the exercise of First Amendment rights played some role in the employer's decision to discharge an employee, the burden shifts to the employer to show that the discharge would have occurred absent motive to punish for First Amendment activity. *Mt. Healthy City School Dist. Bd. of Edn. v. Doyle* (1977), 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484.

**{¶ 20}** Similarly, in the state administrative action, the material issue was whether the School Board nonrenewed Rauch's contract in retaliation for his exercise of rights protected by R.C. Chapter 4117. As such, the essential facts regarding this issue concerned the same union activities engaged in by Rauch that were relied upon by the jury in the federal action. Since the same evidence would prove the underlying facts in each of these two proceedings, the issues are the same for purposes of applying the collateral estoppel doctrine.

**{¶ 21}** We find that the collateral estoppel requirements have been satisfied. Thus, we conclude that the court of appeals properly applied collateral estoppel to the issue of the employer's motivation.

**{¶ 22}** However, an ancillary issue needs to be addressed. Appellants believe that the application of the collateral estoppel doctrine will destroy SERB's exclusive jurisdiction. Appellants assert that under the guise of the collateral estoppel doctrine, the appellate court usurped SERB's role as the exclusive arbiter of unfair labor practice charges.

**{¶ 23}** Appellants do not cite cases which hold that administrative tribunals should not be bound by collateral estoppel principles. Instead, appellants merely cite cases which have held that SERB has exclusive jurisdiction to determine whether unfair labor practices have occurred. See, *e.g., E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.* (1994), 70 Ohio St.3d 125, 127, 637 N.E.2d 878, 879-880; *State ex rel. Fraternal Order of Police, Ohio Labor Council, Inc. v. Franklin Cty. Court of Common Pleas* (1996), 76 Ohio St.3d 287, 667 N.E.2d 929. Appellees do not argue with the holdings from these cases. In fact, they agree that the General Assembly has vested SERB with exclusive jurisdiction to determine whether unfair labor practices have taken place.

**{¶ 24}** We fail to understand appellants' argument. In fact, we agree with the court of appeals and find that the application of the collateral estoppel doctrine does not infringe upon SERB's jurisdiction to determine the ultimate issue in the

case, *i.e.,* whether the School Board's nonrenewal of Rauch's contract constituted an unfair labor practice. SERB still must answer this issue on remand. Collateral estoppel applies only to the fact that the School Board may not relitigate the issue of its motivation for nonrenewing Rauch's contract. SERB continues to have exclusive jurisdiction over the ULP charge.

{¶ 25} The judgment of the court of appeals is affirmed, and the cause is remanded to SERB for a determination whether an unfair labor practice in violation of R.C. 4117.11 occurred.[6]

*Judgment affirmed*
*and cause remanded.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 26} I respectfully dissent. Because the State Employment Relations Board ("SERB") possesses special expertise and superior procedures to resolve the mixed questions of fact and law posed by R.C. Chapter 4117 and *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.* (1993), 66 Ohio St.3d 485, 613 N.E.2d 605, the judicially created doctrine of collateral estoppel should not apply to mixed-motive cases under SERB's jurisdiction.

{¶ 27} *Adena* at paragraph two of the syllabus held:

"Under the 'in part' test to determine the actual motivation of an employer charged with an unfair labor practice, the proponent of the charge has the initial burden of showing that the action by the employer was taken to discriminate against the employee for the exercise of rights protected by R.C. Chapter 4117. Where the proponent meets this burden, a prima facie case is created which raises a

_____

6. Based upon our affirmance of the court of appeals' decision, we need not reach the cross-appeal.

presumption of antiunion animus. The employer is then given an opportunity to present evidence that its actions were the result of other conduct by the employee not related to protected activity, to rebut the presumption. The State Employment Relations Board then determines, by a preponderance of the evidence, whether an unfair labor practice has occurred."

{¶ 28} The legal questions bound up in this analysis are: what conduct R.C. Chapter 4117, in fact, protects and what activities constitute unfair labor practices ("ULP") under that chapter. These legal judgments are so intertwined with factual issues in determining employer motivation for discharge under the *Adena* standard that the two cannot be separated.

{¶ 29} Under *Adena*, SERB is charged with evaluating the factual situation surrounding a ULP charge to determine whether a ULP has in fact occurred. "A ULP occurs when an employer takes an action regarding an employee that is motivated by antiunion animus." *Id.* at 497, 613 N.E.2d at 614. R.C. 4117.12(B)(4) specifically provides that SERB cannot order reinstatement or back pay to a public employee discharged for just cause unrelated to rights provided in R.C. 4117.03.

{¶ 30} Accordingly, as part of any factual resolution on the issue of motivation, *Adena* demands consideration of rights protected by R.C. 4117.03 *vis-à-vis* employee actions that are not protected by that section. It is against this backdrop that SERB must determine the employer's true motivation for discharge. Requiring SERB to determine employer motivation under *Adena* on a case-by-case basis is also consistent with this court's recognition that "[t]he General Assembly has entrusted SERB with the responsibility of administering the statute, and has bestowed upon it the special function of applying the statute's provisions to the complexities of Ohio's industrial life." *State Emp. Relations Bd. v. Miami Univ.* (1994), 71 Ohio St.3d 351, 353, 643 N.E.2d 1113, 1115.

{¶ 31} Moreover, as stated in *Adena,* 66 Ohio St.3d at 494-495, 613 N.E.2d at 612, "[m]otivation is rarely clear. An employer charged with a ULP will almost

always claim that a particular action was taken for sound business reasons, totally unrelated to the employee's participation in protected activities. The employee will almost always claim that the action was taken to retaliate for his or her exercise of protected rights. Since evidence of the employer's motivation is rarely direct, SERB must rely on a good deal of circumstantial evidence in arriving at its conclusion." In conjunction with this difficult task, SERB possesses fact-finding powers greater than those possessed by a jury. For example, (1) SERB agents who have investigated a ULP charge are made parties to the action and may present evidence, (2) SERB has discretion to permit any interested party to intervene and present evidence at the hearing, and (3) in conducting hearings, neither SERB nor its hearing officers are bound by the Rules of Evidence prevailing in courts. R.C. 4117.12(B)(1).

{¶ 32} 1 Restatement of the Law 2d, Judgments (1982) 273, Section 28(3) provides that an exception to the general rule of issue preclusion should apply where "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them." The Reporter's Notes expound on that subsection by stating, "the question of preclusive effect should turn in each case on an analysis of the comparative quality and extensiveness of the procedures followed in the two courts, of their relative competence to deal with the particular issue, and of the legislative purpose in allocating jurisdiction between them." *Id.* at 287. When these considerations are taken into account, it becomes apparent why collateral estoppel should not apply to exclude SERB from independently determining whether an employer's true motivation for discharge offends R.C. Chapter 4117.

{¶ 33} Finally, even if I were to concede that collateral estoppel should have general applicability to mixed-motive cases before SERB, I would nevertheless conclude that, in this case, it has not been adequately proven as an affirmative

defense. In the federal action, the jury considered only whether the employer's motivation for discharge violated Rauch's First Amendment rights. The jury was not required to consider the facts presented to it in relation to R.C. Chapter 4117. In fact, SERB's exclusive jurisdiction would have prevented the federal jury from passing directly on such a determination. See *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 572 N.E.2d 87, paragraph one of the syllabus.

{¶ 34} While there is undoubtedly an overlap between rights protected by the First Amendment to the United States Constitution and rights protected by R.C. Chapter 4117, the protections are not coextensive. For instance, in *Mt. Healthy City School Dist. Bd. of Edn. v. Doyle* (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, the United States Supreme Court reasoned that an untenured teacher's public disclosure and criticism of a school principal's memorandum related to teacher dress and appearance were entitled to First Amendment protection. In that case, the court stated, "[the] question of whether speech of a government employee is constitutionally protected expression necessarily entails striking 'a balance between the interests of the teacher, *as a citizen,* in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " (Emphasis added.) *Id.* at 284, 97 S.Ct. at 574, 50 L.Ed.2d at 481-482, quoting *Pickering v. Twp. High School Dist. 205 Bd. of Edn.* (1968), 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811, 817. Accordingly, the *Mt. Healthy* court considered First Amendment protections of a government employee as a private citizen that are unrelated to that employee's right to collectively bargain or engage in any other activity that would necessarily receive R.C. 4117.03 protection.

{¶ 35} In this case, Rauch and his union have failed to demonstrate that the federal jury based its decision regarding employer motivation on antiunion animus. As discussed in the SERB opinion, Rauch engaged in strike activity that SERB

would have considered protected under R.C. 4117.03, but also engaged in *individual* post-strike behavior unrelated to those rights. There is no way of telling from the federal jury's general verdict, unaccompanied by interrogatories, which of these activities the jury found to have motivated the discharge. Because the burden of pleading and proving the identity of issues rests on the party asserting collateral estoppel (*Goodson v. McDonough Power Equip., Inc.* [1983], 2 Ohio St.3d 193, 198, 2 OBR 732, 737, 443 N.E.2d 978, 983-984), and neither Rauch nor the union on his behalf has demonstrated the precise factual issue decided by the federal jury, collateral estoppel is unavailable as an affirmative defense.

**{¶ 36}** Based on all of the foregoing, I would reverse and remand the case to the appellate court for review of Rauch's first assignment of error, which the court previously avoided as moot based on its disposition and App.R. 12(A)(1)(c).

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

_____