OPINION
Defendant-appellant Joseph Sylvester Construction Company, Inc. ("Contractor") appeals the decision of the Mahoning County Common Pleas Court which adopted the magistrate's order of summary judgment for plaintiff-appellee Credit Reporting Service, Inc. ("CRS"). For the following reasons, the order granting summary judgment is reversed, and this case is remanded for further proceedings.
In April 1991, the parties entered into a written agreement under which Contractor would construct a commercial office building in Boardman, Ohio for CRS. In June 1991, CRS took possession of the building. Thereafter, Contractor remodeled the basement of the building to contain a lounge and a conference room. CRS later had a second stairway installed by an entity unidentified in the record. At the request of the county building inspector, Contractor closed this illegal stairway and installed a fire-rated stairwell with doors.
On July 12, 1994, the county building inspector sent a notice of violations to CRS which specified the following deviations from the Ohio Basic Building Code:
 "1. Interior completions and alterations were performed under your direction contrary to the approved plans, specifically:
 a. An interior stair was constructed. The stair as constructed does not conform to O.B.B.C. The risers exceed the 7" maximum height. The handrails do not have extensions. The work was performed without a building permit or submission of plans.
 b. A conference room was constructed in the basement. The work was performed without a permit or submission of plans.
 2. The building was occupied under your direction before issuance of a certificate of use and occupancy."
A notice of violations was also sent to Contractor which stated:
 "1. Interior completions and alterations were performed under your direction contrary to the approved plans, specifically:
 a. A one-hour fire-rated floor/ceiling assembly was not installed at the basement ceiling.
 b. An interior stair was eliminated at the front (north) of the building. Although a one-exit space is allowable under O.B.B.C., plans must be submitted showing proposed change.
 c. The basement storage area did not receive a limited area sprinkler system.
 d. A conference room was constructed in the basement. The work was performed without a permit or submission of plans.
 2. Restroom exhaust does not discharge to the exterior of the building." (Citations to code sections omitted)
The notices informed the recipients that they had thirty days to file an appeal and request a hearing before the Board of Building Appeals pursuant to Ohio Adm. Code 4101:2-1-35 (C). Contractor failed to appeal its notice of violations. CRS appealed item 1b in its notice of violations, and the Board agreed that Contractor was responsible for obtaining a building permit before constructing the conference room. The Board then told CRS that an occupancy permit was mandatory. In order to obtain the occupancy permit, CRS paid $18,745.51 to Alex Downie 
Sons Co. to bring the building up to code. CRS also allegedly spent $5,546.82 in costs and legal fees in its quest to obtain the permit.
On April 9, 1996, CRS filed a civil suit against Contractor seeking to be reimbursed for the aforementioned sums of money expended on bringing the building up to code and obtaining an occupancy permit. After the case was assigned to a magistrate, CRS moved for summary judgment arguing that because Contractor failed to appeal its notice of violations, it is barred by the doctrine of res judicata from disputing liability. CRS also stated that the amount of damages was undisputed. Contractor filed a memorandum in opposition and filed its own motion for summary judgment stating that there existed genuine issues of material fact with regards to who performed the work that was code violative. On June 19, 1997, the magistrate granted summary judgment for CRS. Contractor filed timely objections to the magistrate's order. The trial court adopted the magistrate's decision on January 28, 1998. The within timely appeal resulted.
Contractor sets forth two assignments of error, the first of which contends:
 "THE COURT ERRED IN GRANTING THE PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
Contractor argues that there exists genuine issues of material facts with regards to who caused the building code violations. CRS counters that Contractor's argument is irrelevant because Contractor's failure to administratively appeal its notice of violations resulted in a final order with res judicata effect on the issue of liability in the case at bar.
Res judicata consists of two concepts: claim preclusion and issue preclusion. Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379,381. The doctrine of claim preclusion states that a judgment rendered in a prior action bars relitigation of the same cause of action and bars litigation of a claim that could have been litigated previously between the same parties. Schomaeker v.First Natl. Bank (1981), 66 Ohio St.2d 304, 313. The doctrine of issue preclusion, also called collateral estoppel, precludes relitigation of an issue that was actually and necessarily determined in a prior action between the same parties or their privies. Id. Both doctrines are applicable to an administrative decision that resulted from a proceeding of a judicial nature.Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning App. (1987),31 Ohio St.3d 260, 262-63.
In the case at bar, CRS contends that Contractor is barred from defensively litigating the issue of whose work resulted in the code violations because the notice of violations, which became final when no appeal was filed, already determined this issue. Thus, it is the doctrine of collateral estoppel that CRS utilizes to defend the trial court's grant of summary judgment. More specifically, CRS is attempting to use the doctrine of offensive collateral estoppel. Offensive collateral estoppel is a term used to describe the scenario where a plaintiff prevents a defendant from relitigating issues that have previously been decided against the defendant in a suit by a different plaintiff. Black's Law Dictionary (6 Ed. 1991) 179. However, the use of offensive collateral estoppel is not permitted in Ohio courts. Goodson v.McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193, 198-199. As advanced supra, the basic requirements that must be met before applying collateral estoppel are: "(1) an administrative proceeding of a judicial nature, (2) an identity of the parties, and (3) an identity of the issues." Dublin Sch. Dist. Bd. offEdn. v. Limbach (1994), 69 Ohio St.3d 255, 257, quoting Am. Soc.for Metals v. Limbach (1991), 59 Ohio St.3d 38, 39.
In accordance, collateral estoppel will not operate in the case at bar to preclude Contractor from defending the breach of contract action brought against it by CRS. Initially, we point out that a notice of violations is not judicial in nature. The first sentence of the notice states that it is being issued without prior hearing. One could attempt to argue, although CRS does not, that even though the notice of violations is not judicial in nature, Contractor had ample opportunity to litigate the issues in the notice by appealing to the Board of Building Appeals.[1] However, collateral estoppel requires the precluded issue to have been actually litigated at a prior time. Fort FryeTeachers Assn., OEA/NEA v. State Emr. Relations Bd. (1998),81 Ohio St.3d 392, 395, citing Whitehead v. Gen. Tel. Co. (1969),20 Ohio St.2d 108.
Moreover, the required identity or mutuality of parties is lacking. A long-standing requirement of collateral estoppel is that the parties in both actions must be identical, or the parties in the subsequent action must be in privity with parties in the prior action. Whitehead, supra at 113. A notice of violations, also called an adjudication order, was sent to Contractor by the Mahoning County Building Inspection Department. A notice of violations must be issued before the state or a political subdivision seeks a civil or criminal remedy against one who violates applicable building codes. See Ohio Adm. Code4101:2-1-35. It is a precursor to state action. For instance, building without a permit and failing to submit plans can result in a $500.00 fine. R.C. 3791.04. The parties involved in each notice of violations are the state or a political subdivision and the alleged violator. Thus, CRS was not a party to the notice of violations that was sent to Contractor by the building inspector.[2]
Moreover, there is no evidence that CRS was in privity with the building inspector. The building inspector was not acting on behalf of CRS. In fact, the building inspector sent CRS its own separate notice of violations. Because mutuality of parties between Contractor's notice of violations and the current civil suit is lacking, issue preclusion is inapplicable and Contractor is not barred by the doctrine of res judicata from defending itself against the claims of CRS. As such, the magistrate and the trial court incorrectly granted summary judgment on the basis of the res judicata doctrine.
The magistrate's decision stated that even if res judicata was inapplicable, Contractor could not defeat CRS's summary judgment motion with an affidavit that incorporated by reference the allegations in its memorandum in opposition to summary judgment. The affidavit submitted by Contractor was that of its president Joseph Sylvester. This affidavit stated that it was not Contractor's work on the building that resulted in code violations but was the work of CRS. This statement seems to be more than an incorporation by reference of the contents of the memorandum.
Regardless, we hold that CRS did not meet its initial burden of proving that there is no genuine issue of fact for trial. SeeDresher v. Burt (1996), 75 Ohio St.3d 280, 293 (stating that the movant must specifically point to evidence which demonstrates the lack of any issue for trial). The submission of a bill from a construction company which the manager of CRS swore contained expenditures necessary to bring the building up to code does not prove that there is no genuine issue for trial with regards to whether the work of Contractor caused the need for the expenditures. The parties dispute the cause of the code violations. When the facts are in dispute, the trial court may not choose to believe the allegations of the movant over the allegations of the nonmovant as credibility is not an appropriate consideration when ruling on a summary judgment motion. Turner v.Turner (1993), 67 Ohio St.3d 337, 341. See, also, Civ.R. 56 (C) (instructing the court to construe the evidence in the nonmovant's favor)
Moreover, CRS asked the magistrate for summary judgment on the issue of liability solely upon the grounds of res judicata. Instead of addressing why there was no genuine issue of fact with regards to who performed the code violative work, CRS merely stated that Contractor's argument was irrelevant since it was barred by res judicata. As previously analyzed, res judicata is inapplicable. CRS did not advance any other argument with regards to Contractor's liability. Thus, CRS failed to meet its initial burden. The decisions below focused on Contractor's failure to meet its burden; however, the nonmovant's burden does not become activated until the movant meets its burden. Accordingly, this assignment of error is sustained.
Contractor's second assignment of error provides:
 "THE COURT ERRED IN DETERMINING DAMAGES, ASSUMING THAT THE DEFENDANT-APPELLANT WAS RESPONSIBLE."
This assignment of error was basically presented by Contractor as an alternative in case we failed to sustain Contractor's first assignment of error. However, we are sustaining Contractor's first assignment of error and reversing the trial court's order of summary judgment. Thus, the entire case is returned to the trial court. Because the case is remanded to determine the existence and/or the extent of Contractor's liability, the issue of damages remains to be determined. Hence, this assignment of error need not be specifically addressed.
For the foregoing reasons, the trial court's order which granted summary judgment is reversed and this cause is remanded for further proceedings according to law and consistent with this court's opinion.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 __________________________ JOSEPH J. VUKOVICH, JUDGE
[1] "This argument is similar to a failure to exhaust administrative remedies argument. Nonetheless, CRS never raised exhaustion. Furthermore, there is nothing to suggest that Contractor actually had an administrative remedy with regards to its liability to CRS. The available administrative appeal to the Board of Building Appeals was an opportunity for Contractor to contest his liability to the state. Even if Contractor had successfully appealed, a favorable Board order would not bar CRS from suing Contractor for breach of contract. See our analysis infra about the purpose of and parties to a notice of violations where we explain that mutuality of parties is lacking.
[2] The magistrate did correctly hold that because Contractor was not a party to CRS's appeal of its notice of violations to the Board of Building Appeals, the Board's decision does not bind Contractor. Conversely, the magistrate failed to apply the identity of parties test to the notice of violations which was sent to Contractor.