**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0521n.06

Case Nos. 15-3809/3832

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RONALD E. SCHERER, SR., | ) | **FILED**<br>Sep 07, 2016<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellant/Cross-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| JAMES M. WILES, ESQ., et al., | ) | OHIO |
| | ) | |
| Defendants-Appellees/Cross- Appellants. | ) | |
| | ) | |

BEFORE: SILER, DAUGHTREY, and SUTTON, Circuit Judges.

**SILER**, Circuit Judge. This legal malpractice action concerns the representation by Defendants James M. Wiles, Esq., ("Wiles") and Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., ("the Wiles Firm") (collectively, "Defendants") of Plaintiff Ronald E. Scherer, Sr., in litigation concerning Scherer's family trust. During all relevant times, Bank One Trust Company, N.A., ("Bank One" or "the Bank") served as trustee. Bank One and Scherer's relationship eroded over the course of two decades until the Bank attempted to resign as trustee in 2004, when Scherer failed to disclose certain information required to complete a final trust accounting. Defendants represented Scherer in Bank One's action against him in an Ohio probate court, which resulted in a $6.2 million judgment against him. This lawsuit followed.

Defendants now appeal the district court's denial of their first motion for summary judgment, in which they asserted that the relevant statute of limitations barred Scherer's claims. Scherer appeals the award of summary judgment for Defendants upon their second motion. In granting Defendants' motion, the district court determined that the basis of the causation element of Scherer's legal malpractice claim had been previously litigated and decided against him. Accordingly, the court concluded that Scherer was collaterally estopped from litigating these issues a second time.

For the reasons set forth below, we **AFFIRM** the judgments.

### Factual Background and Procedural History

**A.    *The trust's origin and the parties' disputes***

The trust that is the subject of this litigation originated in 1979, when Scherer's father, Roger L. Scherer ("Roger"), entered into an agreement with Bank One to create the family trust and funded it with the stock of the family business. When he died in 1982, the trust was divided into three subtrusts: (1) a trust for his son, Ronald Scherer; (2) a trust for his daughter, Linda Scherer Talbott; and (3) a "wife-and-mother trust" for his surviving spouse and his mother. The trusts designated the named beneficiaries of each as income beneficiaries with distribution benefits; remainder beneficiaries were also named. The principal assets conveyed to the three new trusts generally consisted of the stock of entities engaged or affiliated with the family business.

Upon Roger's death, Scherer and Talbott became the chief executives of the family business and oversaw its day-to-day operations. Bank One depended entirely upon Scherer and Talbott to report on the business's operations. Pursuant to the trust agreement, after the original

trust advisors resigned in 1985, Scherer and Talbott assumed the role of trust advisors.[1] These roles entitled them to veto certain of Bank One's actions as trustee and to block Bank One from voting shares of the trust-owned corporations. Scherer was thus able to prevent Bank One from removing him as an officer and director of the trust-owned family businesses.

The instant litigation arose from the decline of the family magazine distribution businesses. They first began to wane in 1990, when Scherer sold the assets of one of the businesses and invested the bulk of the proceeds in the stock of National Wholesale Drug Co., another business that he operated. Within two years, National Wholesale Drug was defunct and its stock worthless. In 1998, Scherer combined the remaining family businesses with comparable regional magazine distributors into a larger entity named Unimag. This transaction left the Scherer and Talbott trusts with large quantities of Unimag stock and debentures, as well as shares of the surviving family companies. But the transaction was unsuccessful: months after Unimag was founded, it ceased operations, leaving its stock without value.

Meanwhile, Bank One remained dissatisfied with the amount of information that Scherer provided it regarding the trust-owned companies' remaining assets. Furthermore, the Bank concluded that Scherer had conveyed various trust assets to himself or to companies that he controlled without informing the trustee or seeking its approval. As a result, the Bank attempted to resign as trustee, but it lacked the requisite information to prepare a final accounting.

## B.    *The pretrial proceedings and discovery sanctions*

In September 2004, Bank One filed a declaratory judgment action against Scherer and the other family-trust beneficiaries in the Franklin County Probate Court in an attempt to compel

---

[1] Talbott served as trust advisor until 2002. Scherer filled this role until the court removed him in 2008, when his son was appointed in his place.

Scherer to produce the information required to prepare a final trust accounting, wind up Bank One's trusteeship, and appoint a successor trustee. Bank One later filed a "Further Claim and/or Third-Party Complaint" against Scherer personally, alleging that he had breached his fiduciary duty by failing to provide the required information. The Bank also alleged that Scherer had converted trust assets to his own profit without the trustee's approval. Scherer and the other beneficiaries counterclaimed, asserting that the Bank breached various fiduciary duties in administering the trusts.

In December 2004, Bank One served Scherer with a document-production request. In December 2005, the probate court found that Scherer had failed to comply with discovery, ordered him to do so by January 13, 2006, and warned that if he did not, the court would issue a contempt order and a $250 fee for each day of noncompliance. *See Bank One Trust Co., N.A. v. Scherer*, Nos. 06AP-70, 06AP-71, 2006 WL 3060136 (Ohio Ct. App. Sept. 29, 2006).

In December 2005, the Wiles Firm filed an appearance on behalf of all beneficiaries to the family trust, i.e., the defendants in the Bank One litigation. The beneficiaries later filed an answer and eight counterclaims against Bank One for breach of fiduciary duty. But the Wiles Firm's involvement did not mend the contentious nature of the discovery disputes: as the Ohio Court of Appeals noted, the litigation "reflect[ed] frequent discovery clashes between opposing counsel and, more significantly, between counsel for [Scherer] and the assigned trial judge." *Bank One Trust Co, N.A.. v. Scherer*, Nos. 08AP-494, 08AP-517, 08AP-526, 2009 WL 4049123, at *4 (Ohio Ct. App. Nov. 24, 2009).

Scherer had still failed to satisfy his discovery obligations by April 2006. Though the court allowed him the opportunity to produce certain documents by the end of the month, he again failed to comply. In June 2006, the court noted that Scherer remained in contempt and

continued to accrue fines. Two months later, it granted Bank One's third motion to compel, finding that Scherer was "blatantly flouting" the discovery process in bad faith. *See Bank One Trust Co., N.A., v. Scherer*, *et al.*, 893 N.E.2d 542, 550 (Ohio Ct. App. 2008).

In October 2006, the court held a hearing as to why Scherer should not be held in contempt and sanctioned. The court also reprimanded Wiles for his lack of effort to respond to interrogatories and noted that he inappropriately interrupted Scherer ninety-four times in the first eighty pages of Scherer's deposition transcript alone. As a discovery sanction, the court dismissed all of the trust beneficiaries' claims with prejudice. It also reduced to judgment the fee for discovery noncompliance, ordering the beneficiaries to pay $74,750 to Bank One and an additional $250 for each day the judgment remained unpaid. The Ohio Court of Appeals affirmed. *See id.*

In an April 2007 hearing, the probate court considered discovery sanctions stemming from ongoing difficulties in scheduling and completing the depositions of David Thompson and Kenneth Dean, accountants for the Scherer companies. When the depositions commenced, Wiles objected so frequently that Dean's deposition had to be terminated. At the show-cause hearing, the court admonished Wiles:

> In 32 years as a lawyer and 20 years as a judge, I have never seen less cooperation. It is just absolutely absurd. Mr. Wiles' conduct throughout has been reprehensible, inexcusable and contemptible. He has demonstrated clearly no regard for the law, no regard for the Court and very little for his own clients. That is a sad, sad scenario. . . . In my view, Mr. Wiles has conducted himself in no way like an officer of this court. And frankly, he has demonstrated himself to be worthy of no veracity, deserves no belief from this Court. . . . Again, in 32 years of practicing law, I have never seen depositions so abused, their purposes frustrated as in Mr. Wiles' case. And I can only conclude because of his continuing, flagrant efforts that it is intentional.

*Id.* at 552-53.

With the matter approaching trial, the court entered a series of orders resolving ongoing discovery disputes and imposing various sanctions on the beneficiaries, including dismissal of their counterclaims.[2] It precluded the beneficiaries from presenting the testimony of Dean and Thompson in light of Scherer's refusal to cooperate and interference with the accountants' availability for depositions. In addition, the court prohibited the beneficiaries from offering any evidence at the hearing or trial regarding certain proposed testimony. This exclusion effectively prohibited Scherer from introducing evidence rebutting Bank One's conversion claim against him, which involved rents associated with trust-owned property, forgiveness of substantial loans that Scherer owed to the business, and use of a luxury motor coach owned by a trust-owned company. 2009 WL 4049123, at *10.

### C.    *The August 2007 bench trial*

During the August 2007 bench trial, Bank One sought approval of its accounting and a judgment of over $6.2 million against Scherer for conversion. The court enforced its previous rulings precluding the admission of certain evidence and struck most of the beneficiaries' objections to the final accounting, finding them largely attempts to restate the stricken counterclaims. *See id.* at *5.

In its final judgment, the probate court concluded that Scherer had misappropriated $6,202,623.00 of trust assets over the course of seven years. It found that Scherer, "without [Bank One's] knowledge or consent, systematically began liquidating the remaining assets of the

---

[2] The court also found Wiles in direct criminal contempt of court and sentenced him to ten days' incarceration. The Ohio Court of Appeals later deemed this sentence excessive. *See Scherer*, 893 N.E.2d at 555.

Scherer Family Business and otherwise engaging in transactions outside the usual course of business."

Addressing Scherer's counterclaims against Bank One for misrepresentation and abuse of process, the court observed, "Contrary to [Scherer's] allegations, [Bank One's] final accountings do not contain misrepresentations, and [Bank One's] preparation and filing of the final accountings was not done with an ulterior purpose or in an effort to use court procedures to accomplish a purpose for which they were not designed." The court deemed each of Bank One's final accountings "true, accurate, and complete." Moreover, it explained that even if the final accountings were erroneous, "any such deficiencies were caused by the repeated refusal of [Scherer] . . . to provide information to [Bank One] despite its repeated and diligent efforts to obtain the information . . . ."

The court concluded that Scherer breached his fiduciary duties as an officer and director of the family business and entered judgment against him for $6,202,623.00, plus interest. It approved Bank One's resignation as trustee and barred any further objections to the Bank's final accountings or claims against it arising from or relating to its administration of the trusts over the years. Finally, the court appointed a successor trustee, ordered Scherer removed as trust advisor, and barred him from reappointment. *See Scherer*, 2009 WL 4049123, at *6.

## D.     *The 2009 appeal*

Scherer and his co-beneficiaries appealed the probate court's judgment. The Ohio Court of Appeals affirmed the $6.2 million judgment against Scherer for improper diversion of trust assets, as well as the denial of his January 2006 counterclaims as a discovery sanction. *See id*. The court observed that the evidence was "nearly one-sided" in support of the probate court's factual conclusions regarding the unauthorized transactions. *Id.* at *14.

However, the appellate court reversed the dismissal of the beneficiaries' counterclaims based on the misconduct of Scherer and Wiles during discovery. *Id.* at *13. Though it affirmed the lower court's dismissal of Scherer's own counterclaims as a discovery sanction, it noted that "[t]o the extent the other beneficiary defendants played any role in the discovery obstruction that impeded this case, that participation is entirely subordinate to [Scherer's] direction and control over the corporations and their assets." *Id.* at *11. The appellate court also reversed the probate court's decision to strike the beneficiaries' objections to the final accounting. *Id.* at *15. It remanded the matter to the probate court for a new hearing on Bank One's final accounting for the trusts and on the counterclaims of the other beneficiaries' counterclaims. The court specifically stated that the remanded matters did not include Scherer's counterclaim or the money judgment against him. *Id.* at *16. The Ohio Supreme Court declined review.

### E.     *Subsequent communication and tolling agreement with the Wiles Firm*

In 2010, Scherer emailed Wiles with questions regarding the successor trustee, final accounting issues, and Wiles' litigation plan. The following day, Wiles responded, in relevant part:

> Going forward I can't say that a plan now exists . . . . I have always felt that what would have to be done is addit[ional] Discovery [with Bank One], and using Alan [Acker] to lay out everything from start to finish, and rendering his opinion on all issues. In other words the approach would be simple. However, as you know we do not know in whose court it [will] go forward. *Also we are out* . . . . We should probably talk.

(emphasis added). In reply, Scherer asked whether Wiles had filed a withdrawal. On May 22, Wiles responded, "No[,] we did not withdraw. We represented only you. [*I*]*f you are out, so are we* . . . ." (emphasis added).

After remand, Scherer and his co-beneficiaries retained counsel from Chorpenning, Good, & Pandora, LLP (the "Chorpenning Firm"), to litigate the remaining counterclaims and objections to the final accounting. Wiles and Scherer occasionally corresponded after the Chorpenning Firm was retained. The pair's final meeting occurred on November 8, 2010, when Wiles provided Scherer with a final bill for the Wiles Firm's representation. In an email apparently following the meeting, Scherer expressed his desire to have "at least one more session together to pick the right direction[s] for all concerned." Wiles replied that a meeting on Tuesday or Wednesday of the following week might be practicable.

Scherer continued to periodically email Wiles. On December 7, 2010, he asked if Wiles was "attending the Status Conference for the new hearing that [Judge] Sheward has scheduled for this coming Tuesday, [12/14/2010]?" Wiles replied:

> I have now gotten copies of recent filing (which were not provided to us) by Either side. Big Surprise, the hearing is next week. . . . I have no desire to appear in front of [Judge] [S]heward at any time, next week or in the future. If there is something to be gained by our or my presence, let me know . . . I Guess my thought is I would only be a liability. The biggest problem is new counsel[']s Lack of personal knowledge of prior activities and shenanigans of [Judge] [S]heward and [Bank One's] Counsel.

In December 2010, Scherer filed a grievance with the Ohio Supreme Court against Franklin County Common Pleas Court Judge Richard S. Sheward, who oversaw the probate proceedings, and emailed Wiles a copy of the grievance. Wiles reviewed the grievance, which included facts related to the Wiles' Firm's representation of Scherer, and suggested certain edits. On December 18, 2010, Scherer emailed Wiles a copy of a supplemental filing that he had prepared to be filed with the Office of Disciplinary Counsel. A portion of this filing recounted

the contempt rulings that Judge Sheward issued against Wiles. Wiles and Scherer exchanged emails between December 18 and 19, 2010, regarding the supplemental filing.

On December 7, 2011, Scherer and Defendants entered into a tolling agreement. The agreement provided, in relevant part, that "[f]rom 12/6, 2011, the period of limitations for any claims of Ronald E. Scherer, Sr. that are not yet barred by the statute of limitations shall be tolled and suspended." Defendants signed the agreement but provided a handwritten annotation of their position that the statute of limitations had already run.

## F.       *Post-remand proceedings and the 2011 trial*

In March 2011, the probate court held a hearing to address potential conflicts of interest arising from defense counsel's representation of both Scherer and the other beneficiaries, who would have benefitted from enforcing the $6.2 million judgment against him. The court observed that all beneficiaries had executed a Conflict of Interest Waiver Agreement, which provided:

> The Beneficiaries have determined that it is in their collective best interest to appoint a representative to interact with, receive information from and to help plan and coordinate strategy during the Litigation with [the Chorpenning Firm]. The Beneficiaries have appointed Ronald E. Scherer, Sr. to perform these functions. . . . By signing this Waiver of Conflict, each of the Beneficiaries has affirmed their selection of Ronald E. Scherer, Sr. to represent each of them as the intermediary with [the Chorpenning Firm].

All of the beneficiaries indicated that they did not want the successor trustee to collect the merits judgment or the contempt judgment against Scherer, and the successor trustee agreed not to do so. The court concluded that despite the judgments against him, all beneficiaries "ha[d] voluntarily agreed to stand by their father [and brother] in this action in all respects . . . so that there is complete commonality of interests among [themselves], acting as 'one family,'" and/or

as "a unified group . . . with a common purpose" and "common interest." The court therefore found no conflict of interest and approved the Chorpenning Firm's representation of all beneficiaries, including Scherer, in the upcoming trial.

After the conflicts hearing, the beneficiaries objected to Bank One's final accounting. The probate court held a new trial on the accuracy of Bank One's final accounting and on the original counterclaims, with Scherer serving as the beneficiaries' representative. In December 2011, the court approved Bank One's final accounting, resolved all counterclaims in the Bank's favor, and confirmed the $6.2 million judgment against Scherer.

Noting Scherer's second opportunity to present the previously precluded testimony, the probate court observed:

> In Defendants' objections and exceptions to the Final Accounting, all Defendants, including Scherer, Sr., object to the entries in the Final Accounting indicating that Scherer, Sr. misappropriated and wrongfully diverted approximately $6.2 million of the Trust assets. Defendants assert that Scherer, Sr. "didn't misappropriate anything." In response to Defendants' objection, Bank One presented additional evidence at the July 2011 trial supporting its accounting for Scherer, Sr.'s unauthorized transactions. At the July 2011 trial, all Defendants had a full and fair opportunity to present evidence in support of their assertion that [Scherer] did not misappropriate Trust assets or otherwise engage in unauthorized transactions, but they failed to do so. Defendants could have called Scherer, Sr. as a witness to explain these transactions, but they did not do so. Defendants could have called David Thompson or Kenneth Dean, the Family Business' accountants during many of the years in question, or any other person with knowledge, to explain these transactions, but Defendants did not do so. Defendants also could have presented additional financial documents from the Scherer Family Business regarding these transactions, but they did not do so. Upon consideration of the totality of the evidence offered at the August 2007 trial and the July 2011 trial, and the credibility and demeanor of all witnesses, the Court finds that Bank One accounted for these unauthorized

transactions and that Scherer did, in fact, misappropriate and wrongfully divert $6,202.623 of Trust assets.

*See Scherer v. Wiles*, No. 2:12-CV-1101, 2015 WL 4512393, at *6 (S.D. Ohio July 24, 2015).

## G.    *The 2011 federal case*

On the first day of the probate court's proceedings in July 2011, Scherer sued JP Morgan Chase ("Chase"), Bank One's successor, in federal court, alleging abuse of process, civil conspiracy, and violation of the Fair Debt Collection Practices Act. The district court granted Chase's motion to dismiss, finding Scherer's claims were barred by the collateral-estoppel doctrine. It explained that the underlying factual basis for each of the claims—that is, the Bank's allegedly false statements about Scherer's refusal to provide information—had been litigated and decided against Scherer in the probate action. *See Scherer v. JPMorgan Chase & Co.*, No. 2:11-cv-635, 2011 WL 6884237, at *4 (S.D. Ohio Dec. 29, 2011).

We affirmed the dismissal, explaining that "all of Scherer's claims are premised on his assertion that the bank used false statements, and otherwise engaged in false or deceptive representations, to establish that Scherer stymied discovery and diverted millions of dollars in assets from the Trusts. These factual predicates to Scherer's claims were clearly resolved by the probate court." *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 438 (6th Cir. 2012).

## H.    *Malpractice allegations and procedural history*

In November 2012, Scherer asserted claims for legal malpractice against Defendants. He alleged that Defendants' misconduct caused the probate court's discovery sanctions, including the dismissal of his counterclaims and exclusion of rebuttal testimony. Defendants asserted a statute-of-limitations defense in their first motion for summary judgment. Defendants filed their second motion for summary judgment in 2015, alleging that Scherer's legal malpractice claim

was barred by collateral estoppel. The district court denied the first motion but granted Defendants' second motion and dismissed the case.

**Standard of Review**

We review the district court's grant of Defendants' second motion for summary judgment de novo. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006).

**Discussion**

To establish a cause of action for legal malpractice, a plaintiff must demonstrate "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 674 N.E.2d 1164, 1169 (Ohio 1997). Only the third element is at issue here. Where the merits of the underlying litigation are at issue, "it is insufficient for the plaintiff to present simply 'some evidence' of the merits of the underlying claim." *Envtl. Network Corp. v. Goodman Weiss Miller, L.L.P.*, 893 N.E.2d 173, 177 (Ohio 2008). Rather, the plaintiff must prove "by a preponderance of the evidence that but for [Defendants'] conduct, [he] would have received a more favorable outcome in the underlying matter." *Id.* at 178.

The court concluded that the collateral-estoppel doctrine barred Scherer from proving that he would have avoided the adverse judgment and been successful on his counterclaims but for Defendants' alleged negligence. It held that as the appointed leader of the trust beneficiary group, Scherer had a full and fair opportunity to try the facts and issues necessary to prove the causation element of his legal malpractice claim in 2011.[3] The 2011 final accounting established

---

[3] However, the district court determined that it was "inappropriate to invoke collateral estoppel to prevent [Scherer] from relitigating the $6.2 million judgment on the basis of the outcome of the 2007 trial," finding it "a question of disputed fact whether Defendants' alleged negligence contributed to the adverse judgment in the 2007 trial." Therefore, we need not analyze the preclusive effects of the first trial.

that Scherer misappropriated $6.2 million and disposed of the remaining beneficiaries' counterclaims—the same counterclaims that Scherer would have brought but for the discovery sanctions—in the Bank's favor. The court therefore concluded that "the facts and issues fully litigated in the second trial have preclusive effect as to the causation element of this legal malpractice claim."

Generally, "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Therefore, in a federal action, we look to the law of the rendering state to determine whether and to what extent the prior judgment should be afforded preclusive effect. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Ohio law thus governs our consideration of the preclusive effect of the judgment against Scherer.

Under Ohio law, "issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005). This principle governs "whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Ass'n v. State Emp't Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998). Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action. *Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007).

The court held that as a party to the final accounting in the July 2011 trial, Scherer enjoyed a full and fair opportunity to present facts, evidence, and witnesses regarding the transactions that comprised the $6.2 million judgment. The court noted that although Scherer

had new counsel and was unrestrained by the discovery sanctions imposed in the earlier action, he failed to present any evidence supporting his assertion that he neither misappropriated trust assets nor otherwise engaged in unauthorized transactions. Given this "second bite at the apple," the court determined that collateral estoppel precluded Scherer from showing that Defendants' negligence contributed to his alleged damages.

Scherer relies upon *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983), for the proposition that collateral estoppel applies "only when the identical issue was actually decided in the former case." He insists that "[a]pproval of the final accounting and liability for fiduciary breach and conversion are not identical issues which were actually litigated in 2011." (internal quotation marks omitted).

Scherer is mistaken. He suggests that claim preclusion, not issue preclusion, applies here. *See generally Fort Frye Teachers Ass'n*, 692 N.E.2d at 144 ("[T]he claim preclusion concept holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."). But the two concepts are distinct. Under Ohio law, issue preclusion "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *State ex rel. Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 592 (Ohio 2010). Because the same *issues*, if not claims, were litigated in the 2011 action, the outcomes of the counterclaims and final accounting have preclusive effect. As to Scherer's would-be counterclaims, the district court determined that "Scherer was given a full and fair second opportunity . . . to litigate for the first time the counterclaims initially barred by discovery sanctions."

The court's application of collateral estoppel to Scherer's counterclaims was grounded upon its conclusion that that Scherer was in privity with the other beneficiaries in the July 2011 trial. The court observed that Scherer and his co-beneficiaries admitted that they were acting in concert during the trust litigation and constituted a unified group with common interests, goals, and purposes. Additionally, it looked to the Conflict of Interest Waiver Agreement and the post-remand proceedings between Scherer and the other beneficiaries. The court held that collateral estoppel prevented Scherer from proving that he would have won on these claims but for the Wiles Firm's alleged negligence.

Scherer submits that he did not exercise sufficient control or adequately participate in the July 2011 trial so as to warrant a finding of privity. He insists that he was only "a liaison between counsel and the other beneficiaries" who interacted with, received information from, and helped coordinate strategy with counsel during the litigation. But even this depiction of Scherer's role does not alter the outcome. Although Scherer was not a party, he "actively participated in, if not controlled, all aspects of the 2011 trial inasmuch as any party controls the litigation of his claims when represented by counsel."

Given Scherer's involvement, the district court correctly looked to *Montana v. United States*, 440 U.S. 147 (1979), which provides:

> To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. These interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved. . . . [T]he persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause. . . . [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or

> who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record.

*Id.* at 153-154 (alterations in original) (internal quotation marks and citations omitted).

Pursuant to *Montana* and Ohio cases like it, Scherer was collaterally estopped from relitigating the underlying issues. As the district court observed, "[U]nder no other circumstance could it be said that someone who was not a party to a claim had a more fair and full opportunity actively to participate in the litigation of a claim in which he shared a common interest." "[A]though not a party," Scherer nonetheless "had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel." *Montana*, 440 U.S. at 155; *see Brown v. Dayton*, 730 N.E.2d 958, 962 (Ohio 2000) ("[A] mutuality of interest, including an identity of desired result, creates privity."). Accordingly, the district court's application of collateral estoppel was not erroneous.

We decline to decide the issue regarding the statute of limitations involved in the first motion before the district court, as it is unnecessary to the resolution of this case.

AFFIRMED.