This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant John A. Barilla has appealed from an order of the Lorain County Court of Common Pleas that affirmed a decision of the Ohio Unemployment Compensation Review Commission ("Review Commission"). This Court affirms.
 I
{¶ 2} Appellant was terminated from his employment with Higbee Department Stores, d.b.a. Dillard's Department Stores ("Dillard's") in April 1997. Appellant then applied for unemployment compensation. Appellant's application was initially denied, but was subsequently approved by the Administrator of the Ohio Bureau of Employment Services[1]
following Appellant's request for reconsideration. After a series of appeals to the Review Commission and to the Lorain County Court of Common Pleas, an appeal was taken to this Court. We affirmed the common pleas court's decision that Appellant was entitled to benefits, concluding that the Review Commission acted unreasonably in determining that Dillard's discharged Appellant for just cause. See Barilla v. Higbee Dept. Stores
(Apr. 19, 2000), 9th Dist. No. 98CA007176 ("Barilla I").
{¶ 3} On August 25, 2000, the Director of the ODJFS issued a determination that Appellant had been paid benefits to which he was not entitled for the week ending April 12, 1997, and for the weeks of June 7, 1997, through August 2, 1997. The determination found that Appellant had been overpaid benefits because of fraudulent misrepresentation, and demanded repayment of $2,313 pursuant to R.C. 4141.35(B). Appellant requested a redetermination of this order, and the Director of the ODJFS thereafter affirmed the August 25, 2000 decision. Appellant then appealed to the Review Commission, and a hearing was held before a hearing officer on December 20, 2000. At the conclusion of the hearing, the hearing officer determined that Appellant had received unemployment benefits to which he was not entitled because he had fraudulently represented that he was not working. Appellant then requested review of this decision by the Review Commission, which request was allowed. After reviewing the entire record, the Review Commission affirmed the hearing officer's determination that Appellant was required to repay his total overpayment of $2,313. Appellant appealed this decision to the Lorain County Court of Common Pleas, which affirmed the Review Commission's decision. Appellant then filed a motion in the common pleas court for findings of fact and conclusions of law, which the court denied. Appellant has timely appealed the common pleas court's decision to this Court, asserting two assignments of error.
 II Assignment of Error Number One {¶ 4} "THE REVIEW COMMISSION'S DECISION AS AFFIRMED BY THE COURT OF COMMON PLEAS WAS UNLAWFUL, UNREASONABLE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 5} In his first assignment of error, Appellant has argued that the Review Commission's decision requiring Appellant to repay $2,313 was unlawful, unreasonable, and contrary to the manifest weight of the evidence. Appellant has contended that the Review Commission erroneously found 1) that Appellant was employed during certain weeks of June through August 1997, 2) that the action against Appellant was not barred by the doctrine of res judicata, and 3) that Appellant fraudulently misrepresented his earnings for the purpose of obtaining benefits to which he was not entitled.
{¶ 6} A common pleas court reviewing a determination by the Review Commission must affirm the decision unless it concludes that the decision was "unlawful, unreasonable, or against the manifest weight of the evidence[.]" R.C. 4141.28(N)(1).[2] When reviewing a common pleas court's decision, this Court applies the same standard. Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694,696-697. This Court thus focuses on the decision of the Review Commission, rather than the determination of the common pleas court.Tenny v. Oberlin College (Dec. 27, 2000), 9th Dist. No. 00CA007661, at 3. Appellate courts are not permitted to make factual findings or determine credibility of witnesses, but reviewing courts do have a duty to determine whether the decision is supported by evidence in the record. Tzangas at 696, citing Irvine v. Unemp. Comp. Bd. of Rev.
(1985), 19 Ohio St.3d 15, 17-18.
{¶ 7} Appellant has asserted three components to his first assignment of error. We will consider each in turn.
 {¶ 8} "THE REVIEW COMMISSION ERRED IN FINDING THE APPELLANT WAS EMPLOYED FROM JUNE 14 THROUGH AUGUST 2, 1997."
{¶ 9} On June 5, 1997 — after Appellant was terminated from his employment with Dillard's and while appeals of his entitlement to unemployment benefits adjudicated in Barilla I were pending Appellant executed a draw agreement with American Mortgage Reduction, Inc. ("AMR").[3] Pursuant to the agreement, Appellant agreed to accept a position with AMR as a loan officer/loan originator and was to be paid a draw against commissions in the amount of $300 per week for eight weeks. The agreement provided that Appellant was required to repay the draws out of commissions earned during his employment with AMR.
{¶ 10} At the same time that he was collecting this weekly draw of $300, Appellant submitted weekly unemployment benefits claim cards on which he answered "no" to the question "Did you work, or were you self-employed during the week claimed?" Appellant also claimed no earnings on the claim forms submitted during these weeks. Consequently, Appellant was awarded weekly benefits in the amount of $257. Based on Appellant's responses on these claim forms, the Review Commission determined that Appellant made fraudulent misrepresentations with the objective of obtaining benefits to which he was not entitled.
{¶ 11} Appellant has argued that the evidence presented to the Review Commission demonstrated that he was not employed by AMR during the weeks of June 7, through August 2, 1997. At the hearing, Appellant testified that he did not do any work either for AMR or for AMR's clients during these eight weeks, but spent this time training by observing the work of others and attending seminars. Appellant testified that he had no experience in the banking or mortgage loan industry prior to the time he executed the draw agreement. According to Appellant, the eight weeks of training did not constitute employment, but was an introductory period during which he could assess whether he would be able to fulfill the duties and responsibilities of a loan officer. Appellant also testified that the weekly $300 draw referred to in the draw agreement did not constitute wages or salary, but were loans that he was required to repay to AMR.
{¶ 12} As an initial matter, Appellant has argued that it was unreasonable for the hearing officer to find that hearsay statements were more credible than Appellant's sworn, unrefuted testimony about the purpose and intent of the parties in executing the draw agreement. In support of this contention, Appellant has cited Green v. Invacare Corp.
(May 26, 1993), 9th Dist. No. 92CA5451, wherein we observed: "It has been held that where the sworn testimony of a witness is contradicted solely by hearsay evidence, it is unreasonable to give credibility to the hearsay statement and deny credibility to the claimant testifying in person." Green, supra at 4-5, citing Taylor v. Bd. Of Review (1984),20 Ohio App.3d 297, 299.
{¶ 13} In Green, the claimant was fired for taking approximately thirteen styrofoam cups from the company cafeteria, and his claim for unemployment compensation was denied on the ground that he had been discharged because of dishonesty. At a hearing before the Bureau of Unemployment Services Board of Review ("Board"), the claimant testified that he had obtained permission from a cafeteria employee to take the cups. The only other evidence cited by the court was testimony by an Invacare manager that the cafeteria employee denied giving the claimant permission to take the cups, and that another employee reported seeing the claimant hide the cups in his truck. The common pleas court reversed the Board's decision and held that the claimant was entitled to unemployment compensation benefits, and we affirmed.
{¶ 14} However, the Review Commission's resolution of conflicting evidence in the present case is unlike the Board's assessment of credibility in Green, where the Board had to determine whether the claimant acted dishonestly in taking the cups based on conflicting sworn testimony and hearsay statements. In the instant case, the Review Commission had to review the entire record — including AMR's business records, correspondence generated during the investigation by the Administrator/Director, the draw agreement, forms Appellant submitted to the ODJFS, as well as Appellant's testimony — and determine whether Appellant's arrangement with AMR constituted employment within the meaning of the statutory and regulatory definitions. More relevant to the Review Commission's inquiry is the Ohio Supreme Court's observation in Simon v. Lake Geauga Printing Co. (1982), 69 Ohio St.2d 41:
 {¶ 15} "[T]he [Review Commission] and the [hearing officer] need not apply stringent rules in determining the admissibility of evidence into the record. The logical corollary is such evidence placed in the record is not only admissible but also must be weighed and considered when making a decision. If evidence which is inadmissible in a court of law is to be disregarded when and if reviewed, there is no reason to admit such evidence at the administrative level or for purposes of [R.C. 4141.28(J)]." Id. at 43.
{¶ 16} For purposes of R.C. Chapter 4141, "wages" are defined as "remuneration paid to an employee by each of the employee's employers with respect to employment[.]" R.C. 4141.01(G)(1). "Remuneration," in turn, "means all compensation for personal services, including commissions[.]" R.C. 4141.01(H)(1). The Ohio Administrative Code further sets forth the procedure for allocating earnings of commission salesmen for purposes of determining qualification for benefits:
 {¶ 17} "When necessary for the purposes of qualifying a commission salesman, whose earnings are entirely in the form of commissions, for unemployment benefits the Administrator may allocate the earnings of such individual to the calendar weeks in which such wages were actually earned. Provided that, where such allocation cannot be made reasonably in such manner, the Administrator may allocate all commissions paid by an employer in the base period equally to each week of employment with such employer in the base period." O.A.C. 4141-25-07(B).
{¶ 18} In addition, R.C. 4141.01(B)(1) defines "employment" for purposes of determining eligibility for unemployment compensation benefits:
 {¶ 19} "`Employment' means service performed by an individual for remuneration under any contract of hire, * * * unless it is shown to the satisfaction of the director that such individual has been and will continue to be free from direction or control over the performance of such service, both under a contract of service and in fact. The director shall adopt rules to define `direction or control.'"
{¶ 20} O.A.C. 4141-3-05 further refines the relevant definition of "employment," listing twenty factors which may evidence "direction or control." The inquiry into "direction and control" is particularly relevant in distinguishing between "employees" and "independent contractors." See, e.g., Bostic v. Connor (1988), 37 Ohio St.3d 144. Appellant's argument that he was not employed by AMR, however, challenges his classification under the more fundamental, statutory definition of employment — i.e., whether he performed services for AMR and received remuneration therefor.
{¶ 21} Our review of the record supports the Review Commission's determination that Appellant was employed by AMR during the weeks of June 7 through August 2, 1997. The draw agreement provides that Appellant "agreed to accept a position with" AMR. Appellant has pointed out that this language does not specify when his acceptance of that position would be effective, and has contended that he would not be an employee of AMR until after the end of the eight-week training period. However, the agreement also required Appellant to repay to AMR any amounts advanced upon the "termination of [Appellant's] employment." If the parties intended that Appellant's employment would not commence until August 2nd, however, AMR would not be able to recoup its advances under the draw agreement if Appellant left prior to that date — a result clearly inconsistent with Appellant's contention that the advances were "loans."
{¶ 22} Furthermore, the Review Commission examined the earnings statements issued to Appellant with his paychecks for the periods ending June 30 through August 15, 1997. On each statement, the monies advanced to Appellant under the draw agreement are identified as "federal taxable wages." Appellant has attempted to explain AMR's taxation of Appellant's advances, rather than Appellant's repayments to AMR, as a "unilateral bookkeeping decision" that is not probative of whether Appellant was employed by AMR. Appellant's explanation fails, however, to explain why AMR would pay payroll taxes on loan proceeds disbursed to Appellant.
{¶ 23} Finally, Appellant's own testimony described his activities with AMR during the eight weeks in which he received advances under the draw agreement as providing services to AMR. Even while insisting that he did not do any work for AMR or its clients during these eight weeks, Appellant stated that he worked approximately thirty hours per week during this training period. Appellant testified that he occasionally went to customers' homes and met with appraisers and observed other loan officers, to "see what the process was about." Although Appellant may not have generated any income for AMR during these eight weeks, it is not the purpose of the unemployment compensation system to subsidize training programs for either employees or prospective employees.
{¶ 24} In sum, the record supports the Review Commission's determination that Appellant was employed from June 7 through August 2, 1997. Appellant's first argument is without merit.
 {¶ 25} "THE REVIEW COMMISSION ERRED IN NOT DISMISSING THE PENDING ACTION PURSUANT TO THE DOCTRINE OF RES JUDICATA."
{¶ 26} Appellant has next argued that the Review Commission erred in determining that the instant action was barred by the doctrine of res judicata. Appellant has contended that ODJFS is collaterally estopped from litigating whether Appellant fraudulently misrepresented his employment and earnings during June through August 1997, because the Administrator failed to raise these objections in Barilla I.
{¶ 27} The doctrine of res judicata provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject of the previous action." Grava v. Parkman Twp. (1995),73 Ohio St.3d 379, syllabus.
{¶ 28} "[T]he collateral estoppel aspect [of res judicata] precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. `In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit.'" Ft. Frye Teachers Assn., OEA/NEA v. StateEmp. Relations Bd. (1998), 81 Ohio St.3d 392, 395, quoting Whitehead v.Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 112.
{¶ 29} "It has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.' (Emphasis added.) * * * The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." National Amusements, Inc. v. Springdale
(1990), 53 Ohio St.3d 60, 62, certiorari denied (1991), 498 U.S. 1120, quoting Rogers v. Whitehall (1986), 25 Ohio St.3d 67, 69; see, also,Brown v. Dayton (2000), 89 Ohio St.3d 245, 248.
{¶ 30} Appellant has argued that the "underlying issue" in bothBarilla I and the present action was whether Appellant was qualified and entitled to unemployment compensation benefits pursuant to R.C. 4141.29. Appellant has contended that the litigation of this issue to final judgment in Barilla I precludes the Director from arguing in the case sub judice that Appellant is not entitled to unemployment compensation benefits.
{¶ 31} The issue before the Review Commission in Barilla I was whether Appellant was discharged from Dillard's "for just cause" pursuant to R.C. 4141.29(D)(2)(a). See Barilla I, at 4-5. If Appellant was discharged for just cause, he would not be entitled to unemployment compensation benefits. R.C. 4141.29(D)(2)(a). The Review Commission determined that Appellant was terminated from Dillard's for dishonesty, alleging that he switched price tags on two tables and sold one of them for hundreds of dollars less than its actual price. See Barilla I, at 3. We affirmed the common pleas court's reversal of the Review Commission's decision, concluding that the Commission's denial of Appellant's application for unemployment compensation benefits was unreasonable. SeeBarilla I, at 6.
{¶ 32} At issue in the instant case is whether Appellant made any fraudulent misrepresentations with the object of obtaining benefits to which he was not entitled. See R.C. 4141.35(A). The Review Commission determined that Appellant fraudulently misrepresented on weekly claim cards submitted to the ODJFS that he was not employed and did not receive any earnings during the weeks of June 7 through August 2, 1997. This issue of whether Appellant made fraudulent misrepresentations on his claim cards is separate and distinct from the issue of whether Appellant was discharged from Dillard's for just cause. As such, the present action does not "aris[e] from a nucleus of facts that was the subject matter of"Barilla I. See Grava, 73 Ohio St.3d at 383. Res judicata therefore does not bar the Director from litigating in the case at bar the issue of whether Appellant made any fraudulent misrepresentations on his weekly claim cards. Appellant's second argument is not well taken.
 {¶ 33} "THE REVIEW COMMISSION ERRED IN FINDING THAT APPELLANT MADE FRAUDULENT MISREPRESENTATIONS WITH THE OBJECTIVE OF OBTAINING BENEFITS FOR WHICH HE WAS NOT ENTITLED."
{¶ 34} Finally, Appellant has argued that the Review Commission erred in concluding that Appellant made fraudulent misrepresentations with respect to his employment and earnings on his weekly claim cards. Appellant has contended that he did not believe that he was employed during the weeks of June 7 through August 2, 1997, and has asserted that the Review Commission erred by finding that he made fraudulent misrepresentations in the absence of evidence of Appellant's intent to defraud the ODJFS.
{¶ 35} Appellant's subjective intent, however, is irrelevant to a determination of whether Appellant made fraudulent misrepresentations pursuant to R.C. 4141.35. In Ridel v. Bd. Of Review (May 19, 1980), 7th Dist. No. 79 C.A. 72, 1980 Ohio App. LEXIS 14014, the court distinguished the elements of common law fraud from the elements necessary to demonstrate fraudulent misrepresentations under R.C. 4141.35:
 {¶ 36} "It is important at the outset to remember that this is a special statutory action arising under a specific unemployment statute, to wit: [R.C. 4141.35]. As a special statutory proceeding, the common law definition of `fraud' does not apply; rather, for purposes of [R.C. 4141.35], fraud simply refers to the making of a statement that is false, where the party making the statement does or should know that it is false." Ridel, supra at *4-5.
{¶ 37} Consequently, the common law standard of scienter does not apply to a determination of whether Appellant made a fraudulent misrepresentation with the object of obtaining benefits pursuant to R.C.4141.35. Loggins v. Ohio Bur. of Emp. Serv., 4th Dist. No. 00CA2716, 2001-Ohio-2667, at 8-9; Johnson v. Ohio Bur. of Emp. Serv. (May 14, 1998), 8th Dist. No. 73591, 1998 Ohio App. LEXIS 2177, at *9-12, appeal not allowed (1998), 83 Ohio St.3d 1452; Christie v. Ohio Bur. of Emp.Serv. (Sept. 6, 1996), 11th Dist. No. 95-L-152, 1996 Ohio App. LEXIS 3875, at *9-10.
{¶ 38} After thoroughly reviewing the record, we conclude that the Review Commission's determination that Appellant made fraudulent misrepresentations was not unlawful, unreasonable, or against the manifest weight of the evidence. By its terms, the draw agreement identified an employment relationship between Appellant and AMR. Appellant's own testimony indicated that he engaged in activities that constituted employment as defined at R.C. 4141.01(B)(1). Appellant's earnings statements from AMR established that he was paid a draw of $300 on June 30, 1997, and a draw of $600 on July 15, July 31, and August 15, 1997. Appellant's attempt to account for these advances as loans was further discredited by AMR's reporting of each draw as taxable wages. Nevertheless, Appellant filed claim forms with the ODJFS during the weeks from June 7, 1997 through August 2, 1997, on which he checked the "no" response to the question "Did you work or were you self-employed during the week claimed?" Appellant's third argument lacks merit.
 Assignment of Error Number Two {¶ 39} "THE COURT OF COMMON PLEAS ERRED IN DENYING APPELLANT'S REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW."
{¶ 40} In his second assignment of error, Appellant has argued that the common pleas court erred in denying Appellant's motion pursuant to Civ.R. 52 for findings of fact and conclusions of law. However, the Ohio Rules of Civil Procedure do not apply to proceedings in which the common pleas court sits as an appellate tribunal reviewing administrative determinations of eligibility for unemployment compensation benefits.Koons v. Bd. of Review (Apr. 16, 1986), 9th Dist. No. 12348, at 8. Moreover, the Ohio Supreme Court has stated that "appellate courts are not permitted to make factual findings." Tzangas, 73 Ohio St.3d at 696. Rather, "[the Review Commission's] role as factfinder is intact; a reviewing court may reverse the [Review Commission's] determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." Id. at 697. The common pleas court correctly applied this standard in the case sub judice, and stated in its journal entry: "The decision of the Review Commission is affirmed as this Court finds that its decision was not unlawful, unreasonable or against the manifest weight of the evidence."
{¶ 41} The court of common pleas did not err in denying Appellant's motion for findings of fact and conclusions of law. Appellant's second assignment of error is not well taken.
 III
{¶ 42} Appellant's assignments of error are overruled. The judgment of the court of common pleas is affirmed.
SLABY, P.J., BATCHELDER, J. CONCUR.
[1] Pursuant to H.B. Nos. 470 and 471, effective July 1, 2000, the functions of the former Bureau of Employment Services were transferred to the Department of Job and Family Services ("ODJFS") and the Department of Commerce.
[2] By amendment effective October 31, 2001, the provisions governing administrative appeals to the court of common pleas from decisions of the Review Commission appear at R.C. 4141.282.
[3] Portions of the record inexplicably refer to AMR as "IMC Mortgage Company."