NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1281n.06

No. 12-3120

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 11, 2012**

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| RONALD E. SCHERER, SR., | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| JP MORGAN CHASE & COMPANY, | ) |
| ZIEGER, TIGGES & LITTLE, LLP, and | ) |
| STEVEN WALTER TIGGES, | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

O P I N I O N

BEFORE: BOGGS, McKEAGUE, Circuit Judges, and CARR, District Judge.[*]

**McKEAGUE, Circuit Judge.** Ronald E. Scherer, Sr. sued JP Morgan Chase and its attorneys, alleging violations of the Fair Debt Collection Practices Act, abuse of process, and civil conspiracy. The district court dismissed Scherer's claims pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the underlying basis for the claims had previously been litigated and decided by an Ohio probate court and thus the collateral estoppel doctrine precluded Scherer from relitigating those issues. In a separate order, the district court also denied a motion filed by defendants seeking to impose sanctions against Scherer's counsel for filing a frivolous action. Scherer appealed the dismissal of his claims. For the reasons set forth below, we **AFFIRM** the district court's order

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

dismissing Scherer's claims and **ORDER** Scherer's counsel to show cause why he should not be sanctioned for filing a frivolous appeal pursuant to 28 U.S.C. § 1927 or Fed. R. App. P. 38.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Family Business

Bank One Trust Company, N.A. ("Bank One"), now known as JP Morgan Chase Bank, N.A., was trustee under a trust agreement with Roger L. Scherer, dated 1979 and restated in 1981. Roger Scherer funded the trust with the stock of the family's wholesale magazine distribution business (hereinafter the "family business"). After Roger Scherer died in April 1982, the Scherer trust was divided into three subtrusts: (1) a trust for Roger's son, Appellant Ronald E. Scherer, Sr. ("Scherer"), (2) a trust for Roger's daughter, Linda Scherer Talbott, and (3) a "wife and mother trust" for Roger's surviving spouse and his mother. By 1998, the collective value of the trusts exceeded $26,000,000.00.

After his father died, Scherer became the chief executive in charge of day-to-day operations of the family business. Between 1990 and 2003, while Scherer was the executive in charge, his relationship with Bank One deteriorated as a result of Scherer's failure to provide financial information about the family business to the trustee.

Consequently, in 1994, Bank One filed a lawsuit against Scherer in the Franklin County, Ohio, Probate Court for Scherer's alleged refusal to turn over the relevant information about the family business. *Bank One Trust Co., N.A. v. Ex'r of Roger L. Scherer Estate*, No. 430379A. That litigation was settled in 1995 when the parties entered into a Non-Disclosure Agreement, which

required Scherer to disclose the information previously requested by Bank One, and to do so on "an ongoing basis and in a timely manner." (Settlement Agt., Page ID #153).

By November 2003, the relationship between Bank One and Scherer had further eroded, Bank One retained litigation counsel and sought to prepare a final trust accounting, obtain probate-court approval, and resign as trustee. In response, in April 2004, Scherer attempted to remove Bank One as trustee.

**B. The 2004 Probate Action and Appeals**

In September 2004, Bank One filed a lawsuit against Scherer in the Franklin County, Ohio, Probate Court (the "probate action") in an effort to compel Scherer to produce the information needed to prepare a final trust accounting, wind up Bank One's trusteeship, and appoint a successor trustee.[1] The bank also alleged Scherer breached the 1995 Non-Disclosure Agreement by not providing information to the trustee, and that he had engaged in wrongful and unauthorized dealings with trust assets. On December 10, 2004, Bank One served Scherer with a document-production request, but Scherer did not respond.

Accordingly, on two separate occasions in 2005, Bank One filed motions to compel discovery from Scherer but did not receive the requested documents. On December 20, 2005, the probate court entered an order finding Scherer had failed to comply with discovery requests and ordered Scherer to comply by January 13, 2006. The court also warned Scherer that failure to comply would result

---

[1]As noted by the district court, probate Judge Lawrence A. Belskis originally presided over the probate action but ultimately recused himself after discovering a conflict. Judge Richard Sheward was assigned to the case in January 2006.

in a contempt charge and a fee of $250 per day until he complied. (12/20/2005 Order, Page ID #166).

In January 2006, Scherer filed a counterclaim against Bank One, asserting eight separate causes of action, including breach of fiduciary duty, breach of trust agreement, defamation, and fraudulent concealment. (Scherer Counterclaim, Page ID #184-94). In February 2006, Bank One filed a "Further Claim and/or Third-Party Complaint" alleging Scherer breached his fiduciary duty as the person in charge of the family business by failing to provide required information and by mismanaging trust-owned assets. Further, they alleged that he breached his fiduciary duty as "trust advisor" by abusing his power and acting in his own best interests. (Third Party Compl., Page ID #218-219).

By April 2006, Scherer had still failed to comply with the discovery order.[2] The court gave him another chance to produce certain specific categories of documents by April 27, 2006. Scherer again did not comply. In June 2006, the court reminded Scherer that he remained in contempt and that the daily fine was continuing. Bank One filed another motion to compel on July 25, 2006. In granting the motion to compel, the court stated: "Defendants are blatantly flouting the discovery process and are failing to act in good faith . . . ." (08/31/2006 Order, Page ID #268). The court further ordered that Scherer fully comply with all discovery requests by September 21, 2006. On

---

[2]In its Findings of Fact and Conclusions of Law, the probate court found that in early 2006, Scherer had turned over tax returns and summary financial statements but that he still refused to turn over all of the requested information or answer interrogatories—all in violation of the court's order. (05/14/2008 Findings, Page ID #470-71).

October 5, 2006, the court held a hearing on the discovery issues. It issued its findings and conclusions from that hearing on January 4, 2007.

The court concluded that Scherer's failure to comply was willful and in bad faith. (01/04/2007 Findings, Page ID #287). The court explained: "The continued discovery misconduct of Defendants and disobedience of the Court's orders in the face of lesser discovery sanctions previously imposed by this Court, is so reprehensible, irresponsible, and contumacious that more warnings and further similar discovery sanctions would be futile. More drastic discovery sanctions are therefore necessary and appropriate." (01/04/2007 Findings, Page ID #287). As sanctions, the court dismissed Scherer's January 2006 counterclaim with prejudice, held Scherer in contempt, and ordered him to pay the $250 per day fine that had been accumulating since December 2005, plus an additional $250 per day that the judgment went unpaid. (01/04/2007 Findings, Page ID #288). Scherer appealed the order and it was upheld by the Ohio Tenth District Court of Appeals. *Bank One Trust Co., N.A. v. Scherer*, 893 N.E.2d 542, 548 (Ohio Ct. App. 2008).

On August 10, 2007, in the ongoing probate action, Scherer filed a request for leave of the court to file additional counterclaims against Bank One for fraudulent misrepresentation and abuse of process. (Mot. for Leave, Page ID #405). Specifically, Scherer alleged that Bank One's "accounting contains numerous entries and information that are incorrect and it misrepresents numerous transactions," and that Bank One's "misrepresentations were made knowingly" and with the "ulterior purpose" of "obtain[ing] a release for its administration of the Trust." (Mot. for Leave, Page ID #408).

The case was tried to the probate court in August 2007. The court issued its 60-page decision on May 14, 2008. *Bank One Trust Co., N.A. v. Scherer*, No. 430379-C. It found that beginning in 1999, Scherer had misappropriated $6,202,623.00 of trust assets over the course of seven years. Specifically, the court found that Scherer "stymied all of [Bank One's] efforts to obtain information in order to more effectively administer the assets of the . . . Trusts, [and thus] began the process of resigning as Trustee . . . ." Further, in the face of repeated discovery requests, Scherer "failed to put a hold on his document destruction policy," and "refused to provide [Bank One] with any of the requested information." (05/14/08 Findings, Page ID #469-70).

Moreover, the court found that Scherer, "without [Bank One's] knowledge or consent, systematically began liquidating the remaining assets of the Scherer Family Business and otherwise engaging in transactions outside the usual course of business." (05/14/08 Findings, Page ID #472). These transactions "depleted the value of the Scherer Family Business and diverted millions of dollars of cash and other assets that should have been paid to the Trustee on behalf of [the Trusts]." (05/14/08 Findings, Page ID #472). Additionally, Scherer "knowingly impeded [Bank One's] ability to perform the very functions that [he] alleges [Bank One] failed to fulfill despite its diligent efforts to do so: to actively manage the assets of the [Trusts], to monitor or diversify trust assets, to discover sooner Mr. Scherer's . . . misappropriation of Trust assets, to prepare full and accurate trust statements and accountings, and to prepare accurate trust tax returns." (05/14/08 Findings, Page ID #481).

With respect to Scherer's late counterclaims for misrepresentation and abuse of process, the court stated, "[c]ontrary to [Scherer's] allegations, [Bank One's] final accountings do not contain

misrepresentations, and [Bank One's] preparation and filing of the final accountings was not done with an ulterior purpose or in an effort to use court procedures to accomplish a purpose for which they were not designed." Further, "[e]ach of [Bank One's] final accountings, as supplemented, is true, accurate, and complete. Even if . . . the final accountings are inaccurate and incomplete . . any such deficiencies were caused by the repeated refusal of [Scherer] . . . to provide information to [Bank One] despite its repeated and diligent efforts to obtain the information . . . ." (05/14/08 Findings, Page ID #485-86).

The court held that Scherer breached his fiduciary duties as an officer and director of the family business and entered judgment against Scherer for $6,202,623.00 plus interest. It also held that "[a]ny further objections to [Bank One's] final accountings, and any and all claims against [Bank One] arising from or relating to its final accountings, its administration of the Trusts, or any other matters pertaining to the Trusts and Trust Agreement are hereby adjudicated and hereafter barred." (05/14/08 Findings, Page ID #496, 499).

Scherer appealed the judgment against him. On November 24, 2009, the Ohio court of appeals unanimously affirmed both the $6,202,623.00 judgment against Scherer for improper diversion of trust assets and the dismissal of Scherer's January 2006 counterclaims as a discovery sanction. *Bank One Trust Co., N.A. v. Scherer*, 2009 WL 4049123 (Ohio Ct. App. Nov. 24, 2009). The court also reversed the probate court's decision as to Scherer's family's counterclaims and their objections as to the final accounting. The court remanded the case to the probate court to address the family's counterclaims and objections, but the court specifically stated this did not include

Scherer's counterclaim or the monetary judgment against him. *Bank One Trust Co.*, 2009 WL 4049123, at *1.

After remand, the probate court held a trial on the remaining issues. It issued its decision on December 1, 2011. *Bank One Trust Co., N.A. v. Ronald E. Scherer*, No. 430379-C.[3] In the meantime, Scherer filed his federal action on the first day of the probate court's proceedings, July 18, 2011. The federal district court issued its decision on December 29, 2011, but did not discuss the probate court's decision in detail.

## C. Scherer's Federal Claims

Scherer's federal complaint asserts three claims. First, he alleges that defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, by "[m]aking false statements of fact during the course of the 2004 Franklin County Probate Action" in pursuit of a "False Debt Claim" in order to harass Scherer, and using false, misleading, or unconscionable means to collect a debt. Second, he claims that defendants committed "abuse of process" by perverting the 2004 probate action through the "use of false, deceptive or misleading representations and evidence" submitted during that lawsuit in pursuit of the bank's "ulterior motive of attempting to avoid liability . . . with respect to the Bank's failure to properly administer the [Trusts]; its failure to properly

---

[3]On remand, the trial court once again concluded that "Bank One accurately accounted for . . . the unauthorized transactions and that Scherer, Sr. did in fact, misappropriate and wrongfully divert $6,202,623 of Trust assets . . ." (12/01/2011 Probate Findings, Appellees' Appx. at A73). Additionally, in response to accusations that the bank committed fraud on the court in order to get the judgment against Scherer, the court asserted the accusations were "factually baseless," and that "Bank One and its representative did not make any false statements to the Court." (12/01/2011 Probate Findings, Appellees' Appx. at A75).

account for the administration of such trusts; and the loss of more than $26,000,000 in value from such trusts as a consequence of the Bank's acts or omissions." Finally, Scherer brings a civil conspiracy claim alleging defendants conspired to "knowingly and intentionally misrepresent material facts . . . to the Franklin County Probate Court during the 2004 Franklin County Probate Action, all for the purpose of attempting to insulate the Bank from liability for its misconduct."

On October 3, 2011, defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Prior to the district court's decision on the motion to dismiss, defendants also filed a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Scherer filed responses to both motions. On December 29, 2011, the district court granted defendants' motion to dismiss and denied their motion for sanctions.

In deciding defendants' motion to dismiss, the district court held that all of Scherer's claims were barred by the collateral estoppel doctrine because the underlying factual basis for each of the claims, defendants' alleged false statements about Scherer's refusal to provide defendants with required information, had already been litigated and decided against Scherer in the 2004 probate action. *Scherer v. JP Morgan Chase & Co.*, 2011 WL 6884237, at *4 (S.D. Ohio 2011).

With respect to defendants' motion for sanctions, the court stated that it was "a very close call," but that it was "not inclined to grant the sanctions," because even though Scherer's counsel "should have been more familiar with preclusion law and, perhaps, more careful with the wording utilized in the complaint, it does not appear to the Court that counsel filed this action for the improper purpose of harassing Defendants and increasing the cost of litigation." (12/29/2011 Opn on Mot. for Sanctions, Page ID #3657-58).

No. 12-3120
*Scherer v. JP Morgan Chase & Co., et. al.*

Scherer timely appealed the district court's decision granting defendants' motion to dismiss.[4]

## STANDARD OF REVIEW

We review de novo a district court's ruling on a motion to dismiss a claim, *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008), and a district court's application of collateral estoppel. *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999). Collateral estoppel is properly raised in a Rule 12(b)(6) motion to dismiss. *See Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 849-50 (6th Cir. 2006) (affirming 12(b)(6) dismissal because all elements of collateral estoppel were satisfied); *see also Palmer v. Manor Care, Inc.*, 11 F. App'x 567, 569 (6th Cir. 2001) ("We conclude that the district court properly relied on collateral estoppel to grant defendant's motion to dismiss.").

Generally, in order to defeat a motion to dismiss:

> [T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. We need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. [T]he complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, and state a claim to relief that is plausible on its face.

*Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citations and internal quotation marks omitted).

---

[4]Scherer filed an opening brief to this Court, and defendants filed a response, but Scherer did not file a reply brief.

## ANALYSIS

### A. Collateral Estoppel

Generally, "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. §1738). Accordingly, federal courts must look to the law of the rendering state to determine whether and to what extent the prior judgment should receive preclusive effect in a federal action. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 US. 75, 81 (1984). Thus, in this case we look to Ohio law to determine the preclusive effect of the judgment entered against Scherer in the 2004 probate action.

Under Ohio law, "issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action," *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005), "whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Ass'n v. State Emp'r Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998); *see also Whitehead v. Gen. Tel. Co.*, 254 N.E.2d 10, 13 (Ohio 1969) ("[E]ven where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit.").

Thus, in Ohio, collateral estoppel applies when the fact or issue: (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action. *Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007). Where collateral estoppel is invoked defensively, only the party against whom issue preclusion is applied

must have been a party to the underlying action. *McCrory v. Children's Hosp.*, 501 N.E.2d 1238, 1244 (Ohio Ct. App. 1986); *see also Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir. 1999) (reasoning that Ohio law allows the use of non-mutual defensive collateral estoppel if the plaintiff was afforded the opportunity to litigate the issue); *McAdoo v. Dallas Corp.*, 932 F.2d 522, 525 (6th Cir. 1991) ("We do not read Ohio law as insisting on mutuality in defensive collateral estoppel cases . . . .").

In the district court, Scherer contested each of the collateral-estoppel elements, but his briefing to this Court only contests the first element—whether the issues were actually and directly litigated in the prior action. His main argument on this point is that the district court erred when it concluded that Ohio law does not require that the issue adjudicated in the prior action be completely identical to the issue in the subsequent action. Scherer argues that the Ohio Supreme Court cases relied upon by the district court, in particular *Fort Frye*, are inapplicable, and that a more recent Ohio Supreme Court case holds that, for collateral estoppel to apply, the issues in the prior and subsequent actions must be "identical." Scherer believes that in this case, the issues are not "identical" because "[n]othing in the Prior State Court Proceeding involved whether the manner of Appellees' prosecution of the claims against Scherer violated, or did not violate, the FDCPA," and the record "is devoid of any evidence that there was an actual or necessary adjudication of the issues pertaining to Scherer's abuse of process claim." Appellant Br. at 24-25. Scherer is mistaken.

The district court did not err in its discussion or application of the Ohio collateral-estoppel doctrine. Scherer primarily relies upon two Ohio cases to support his assertion that the doctrine requires complete identity of the issues in order for estoppel to apply, *Olmsted Falls Bd. of Educ.*

*v. Cuyahoga Cnty. Bd. of Revision*, 909 N.E.2d 597 (Ohio 2009), and *Beatrice Foods, Inc. v. Lindley*, 434 N.E.2d 727 (Ohio 1982). Notably, both cases involved a very distinct issue—challenges to property valuations in appeals from the Board of Tax Appeals—and contrary to Scherer's argument, neither case altered the collateral-estoppel doctrine in Ohio.

In *Olmsted Falls*, a taxpayer appealed a decision of the Board of Tax Appeals ("BTA") that adopted an increased valuation of the taxpayer's property from $325,000 in 2002 to $1,200,000 for 2003. The taxpayer argued in part that the BTA's decision was barred under an estoppel theory—though the court specifically noted that the case did not present a "classic" type of estoppel. *Olmsted Falls*, 909 N.E.2d at 601.

In deciding the tax issue, the court explained that it is "elemental that for purposes of any challenge to the valuation of real property, each tax year constitutes a new 'claim' or 'cause of action,' such that the determination of value for one tax year does not operate as res judicata . . . of value as to the next tax year." *Id.* The court then recognized a line of tax valuation cases in which Ohio courts held that tax value in one year does not constitute the "'same issue' as the ultimate issue of tax value in a different year." *Id.* However, the court also stated that "the determination in an earlier year of a discrete factual/legal issue that is common to successive tax years may bar relitigation of that discrete issue in the later years." *Id.* at 602 (citing *Columbus Bd. of Educ. v. Franklin Cnty. Bd. of Revision*, 1993 WL 540285, at *3 (Ohio Ct. App. Dec. 28, 1993)). Ultimately, the court rejected the taxpayer's argument on the basis that it mistakenly equated the issue of tax value for one year with the issue of tax value for a subsequent year as if they were the "same issue." *Olmsted Falls*, 909 N.E.2d at 602.

Contrary to Scherer's assertions, the *Olmsted Falls* decision did not alter Ohio's collateral estoppel doctrine. The court's decision was clearly on a discrete issue involving challenges to property valuations from year to year, and it only involved those cases having decided that discrete issue. The court even recognized that this was not a "classic" type of estoppel. And in any event, the court explained that even under such unique facts, estoppel may still apply to a prior decision on a "discrete factual/legal issue" common to the successive years. Further, the court failed even to mention the Ohio Supreme Court's *Fort Frye* decision that Scherer argues was displaced by *Olmsted Falls*.

Notably, there were two dissenting justices in *Olmsted Falls* who agreed with the majority "that this case does not involve collateral estoppel . . . ." *Olmsted Falls*, 909 N.E.2d at 604 (Pfeifer and O'Donnell, JJ., dissenting). One would think that if the Ohio Supreme Court was making a decision that altered the collateral-estoppel doctrine, there would be much more discussion among the justices than this. And in fact, it is clear from cases decided after *Olmsted Falls* that the Ohio Supreme Court continues to recognize the viability of *Fort Frye* and the principle that collateral estoppel "'precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action.'" *State ex rel. Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 592 (Ohio 2010) (quoting *Ft. Frye*, 692 N.E.2d at 144).

Scherer's reliance on *Beatrice Foods* is similarly unconvincing. In that case, the taxpayer argued that the Tax Commissioner's prior tax assessments barred the Commissioner from issuing a subsequent assessment. *Beatrice Foods*, 434 N.E.2d at 731. The court rejected this argument and

stated "[i]n order for [collateral estoppel] to apply, there must be an identity of parties and issues in the proceedings." *Id.* It concluded, "[a]t issue in the case at bar is a separate assessment based on an entirely different audit period, and we find the requisite identity of issues is not present." *Id.*

Scherer argues based on this case that the issues presented to the district court here were not "identical" to issues decided in the 2004 probate action and thus should not have been barred. We disagree and conclude that the district court correctly determined that collateral estoppel applied here.

All three of Scherer's claims in this action are premised on a single foundation—that the bank made false statements and misrepresentations to the probate court regarding Scherer's conduct during discovery and regarding Scherer's misappropriation of trust assets over the course of several years. Scherer's complaint alleges that the bank made "false statements of fact during the course of the 2004 Franklin County Probate Action" in pursuit of a "False Debt Claim"; that they perverted the 2004 probate action through the "use of false, deceptive or misleading representations and evidence" submitted during that lawsuit in pursuit of the bank's "ulterior motive of attempting to avoid liability"; and that the bank conspired to "knowingly and intentionally misrepresent material facts . . . to the Franklin County Probate Court during the 2004 Franklin County Probate Action, all for the purpose of attempting to insulate the Bank from liability for its misconduct." (Compl., Page ID #34, 37, 39).

There is no question that the probate court squarely decided these issues during the course of the 2004 action and that the Ohio Court of Appeals upheld the decision as it applied to Scherer.

- 15 -

The probate court concluded that Scherer "stymied all of [Bank One's] efforts to obtain information," and that he repeatedly "failed to put a hold on his document destruction policy," and "refused to provide [Bank One] with any of the requested information." Further, the court found that Scherer, "without [Bank One's] knowledge or consent, systematically began liquidating the remaining assets of the Scherer Family Business and otherwise engaging in transactions outside the usual course of business." And these transactions "diverted millions of dollars of cash and other assets that should have been paid to the Trustee on behalf of [the Trusts]." (05/14/08 Findings, Page ID #472).

Additionally, the court concluded that Scherer "knowingly impeded [Bank One's] ability to perform the very functions that [he] alleges [Bank One] failed to fulfill despite its diligent efforts to do so: to actively manage the assets of the [Trusts], to monitor or diversify trust assets, to discover sooner Mr. Scherer's . . . misappropriation of Trust assets, to prepare full and accurate trust statements and accountings, and to prepare accurate trust tax returns." (05/14/08 Findings, Page ID #481)

Scherer cursorily argues that his request for leave to file his late counterclaims for misrepresentation and abuse of process was never expressly granted by the probate court and thus the issues contained in that counterclaim were never decided. Scherer does not cite any authority for this proposition. Ordinarily, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

But even assuming Scherer has not waived his argument by not supporting it, the probate court's opinion contradicts Scherer's assertion. The court clearly took up the counterclaim issues and decided them when it concluded: "Contrary to [Scherer's] allegations, [Bank One's] final accountings do not contain misrepresentations, and [Bank One's] preparation and filing of the final accountings was not done with an ulterior purpose or in an effort to use court procedures to accomplish a purpose for which they were not designed." The court further held, "[e]ach of [Bank One's] final accountings, as supplemented, is true, accurate, and complete. Even if . . . the final accountings are inaccurate and incomplete . . any such deficiencies were caused by the repeated refusal of [Scherer] . . . to provide information to [Bank One] despite its repeated and diligent efforts to obtain the information . . . ." (05/14/08 Findings, Page ID #485-86).

The Ohio Court of Appeals overwhelmingly upheld the probate court's decisions with respect to Scherer's attempts to "cripple" discovery proceedings and his improper diversion of trust assets. *Bank One Trust Co., N.A.,* 2009 WL 4049123, at *11, *14 ("[T]he evidence not only is sufficient to sustain the probate court's factual conclusions regarding the transactions but is nearly one-sided in support of those conclusions.").

We have recognized, consistent with Ohio law, that where a factual predicate or essential element of the claim being asserted has already been determined, collateral estoppel applies. *See, e.g., McCormick v. Braverman*, 451 F.3d 382, 398 (6th Cir. 2006) (concluding that factual predicate of property ownership decided in state court precluded claims based on that predicate); *Quality Measurement Co. v. IPSOS S.A.*, 56 F. App'x 639, 646 (6th Cir. 2003) ("RSC's claims for actual and constructive fraud are therefore barred by issue preclusion, as an essential element of its claim has

already been determined against it."); *Clemons v. Noland*, 1978 WL 216612, at *4 (Ohio Ct. App. 1978) ("Collateral estoppel applies to bar a second action when an essential element of that second action has been adversely decided against plaintiff in a prior action between the same parties.").

Here, all of Scherer's claims are premised on his assertion that the bank used false statements, and otherwise engaged in false or deceptive representations, to establish that Scherer stymied discovery and diverted millions of dollars in assets from the Trusts. These factual predicates to Scherer's claims were clearly resolved by the probate court. For purposes of collateral estoppel, it does not matter that Scherer is asserting a different variety of claim in this action. Issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action "whether the cause of action in the two actions be identical or different." *Ft. Frye*, 692 N.E.2d at 144. The underlying factual issues here have already been decided. Accordingly, Scherer is precluded from relitigating them in federal court.

## B. Sanctions

Under 28 U.S.C. § 1927, we have discretion to impose "costs, expenses, and attorney fees" personally on an attorney "who . . . multiplies the proceedings in any case unreasonably and vexatiously." *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012); 28 U.S.C. § 1927. "This standard is met 'when an attorney knows or reasonably should know that a claim pursued is frivolous.'" *Tareco Prop., Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir. 2003) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)); *see also Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 644 (6th Cir. 2009) (advising that sanctions are appropriate "where the attorney . . . knowingly disregards the risk that his actions will needlessly multiply proceedings.") (internal

quotations omitted). Section 1927 sanctions may be imposed without a finding that the lawyer subjectively knew that his conduct was inappropriate. *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997); *see also Gibson v. Solideal USA, Inc.*, 2012 WL 2818944, at *6 (6th Cir. 2012) ("A court may sanction an attorney under § 1927, even in the absence of bad faith"). However, the conduct must exceed "simple inadvertence or negligence that frustrates the trial judge." *Ridder*, 109 F.3d at 298.

Similarly, under the Federal Rules of Appellate Procedure Rule 38, we can impose sanctions if we determine that an appeal is frivolous after a separately filed motion or notice from the court and a reasonable opportunity to respond. Fed. R. App. P. 38; *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (explaining that notice and opportunity to respond must precede the imposition of sanctions). We have noted that "Rule 38 should doubtless be more often enforced than ignored in the face of a frivolous appeal." *WSM, Inc. v. Tenn. Sales Co.*, 709 F.2d 1084, 1088 (6th Cir. 1983). Sanctions under Fed. R. App. P. 38 are "appropriate when an appeal is 'wholly without merit' and when the appellant's 'arguments essentially had no reasonable expectation of altering the district court's judgment based on law or fact.'" *B&H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 270 (6th Cir. 2008) (quoting *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999)).

Here, even though the district court elected not to impose sanctions, it stated that the decision was a "very close call." The district court also admonished counsel for not being more familiar with

preclusion law and advised him to be more careful in evaluating potential cases. This should have given counsel a clear warning that the issues raised below would likely lack any merit on appeal.[5]

Thus, at the very least, Scherer's counsel seems to have "knowingly disregard[ed] the risk" that in pursuing an appeal his actions would "needlessly multiply proceedings." *Garner*, 554 F.3d at 644. Counsel's failure to file a reply brief is further evidence that he had reason to know the issue on appeal was a non-starter. *See Leeds v. City of Muldraugh, Meade Cnty., Ky.*, 174 F. App'x 251, 256 (6th Cir. 2006) (acknowledging that failure to file reply brief may be additional evidence that sanctions are appropriate). It is also noteworthy that on appeal counsel abandoned all but a single argument raised below and that the best support he could muster for that argument was an Ohio Supreme Court case that briefly discussed the concept of estoppel, but that clearly did not alter the course of the estoppel doctrine in Ohio. After the district court's rebuke, counsel should have seen the writing on the wall.

Accordingly, we order Scherer's counsel to show cause as to why, pursuant to 28 U.S.C. § 1927 or Fed. R. App. P. 38, he should not be sanctioned for filing this appeal.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the dismissal of Scherer's claims pursuant to Fed. R. Civ. P. 12(b)(6), and we **ORDER** Scherer's counsel to show cause as to why he should not be sanctioned for filing this appeal. Counsel will have 30 days to submit a response to the clerk of this court.

---

[5]Scherer had the same counsel in the district court and during the course of this appeal.