**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0786n.06

**No. 13-1036**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CATHIE KEMPTER, | ) | **FILED**<br>Aug 26, 2013<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| MICHIGAN BELL TELEPHONE COMPANY, | ) | District of Michigan |
| dba AT&T Michigan; TRACY BAIN; RICK SPIECE, | ) | |
| aka Rick Speice; RENEE GARCIA, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:        BOGGS and McKEAGUE, Circuit Judges; BECKWITH, Senior District Judge.[*]

BOGGS, Circuit Judge.  Cathie Kempter, a customer service representative for Michigan Bell Telephone (MBT), developed carpal tunnel syndrome and took eight months of medical leave, but was fired after her leave expired and she failed to return to work.  Kempter brought this discrimination suit under the Americans with Disabilities Act, arguing that she was fired on the basis of her disability rather than her attendance, and that MBT failed to provide her either of her two proposed reasonable accommodations.  One accommodation involved placement in a light-duty position for recuperating employees; the other involved transfer to a vacant position that involved less typing.  The district court rejected Kempter's arguments, finding that her carpal tunnel syndrome

---

[*]The Honorable Sandra S. Beckwith, United States Senior District Judge for the Southern District of Ohio, sitting by designation.

was not a "disability" under the ADA, and alternatively that both of her accommodations were unreasonable and unsupported by the facts. On appeal, MBT requests imposition of sanctions for prosecuting a frivolous appeal. For the following reasons, we affirm the decision of the district court and impose sanctions on Kempter's counsel.

**I**

For over 12 years, Kempter worked as a customer service representative for MBT. Customer service representatives answer calls from customers and input their information into a computer database. The job involves at least six hours of typing a day. (*See* Kempter Deposition at 38, R.13-12 at PageID# 119.) As a result of her extensive keyboard and mouse work, Kempter developed carpal tunnel syndrome.

In July 2009, Kempter began medical leave to have surgery for her carpal tunnel syndrome. Three months after the surgery, Kempter's doctor, Dr. Arno Weiss, indicated that Kempter was restricted from "working with computer keyboard or typing for more than 2 hours a day" and the restrictions are "to be permanent." (Dr. Weiss Note, R.13-9.) On March 10, 2010, Kempter was examined by Dr. B.J. Page, an independent doctor engaged by MBT to determine if Kempter was entitled to continuing disability leave. Dr. Page concluded that Kempter did not require further treatment and was fit to return to work without "any work restrictions." (Dr. Page Report at 5, R.15-8.) As a result, MBT's disability carrier informed Kempter on March 22 that her disability benefits were being terminated and that she was expected to return to work the next day, Tuesday, March 23. (Kempter Fax, R.13-8.) Kempter responded that day, attaching the note from Dr. Weiss and explaining that "I am unable to keyboard no more than 2 hours per day . . . [s]o at this time I will not

be able to return to work." (*Ibid*.) Kempter ultimately showed up on Friday, March 26, but was suspended pending dismissal due to her failure to attend from March 23 to 25. (Suspension Letter, R.13-6.) She was formally terminated on April 19. (Termination Letter, R.13-7.)

Kempter was fired because she had reached the last step in MBT's "progressive discipline path" for unexcused absences. (Attendance Policy at 4, R.13-3.) Under MBT's attendance policy, five "chargeable disability absences" within a five-year period result in termination (the first absence is excused, the second two receive written warnings, the fourth three days unpaid suspension). (*Ibid*.) "Chargeable disability absences" are those absences caused by "on/off the job injury or illness, as well as any relapse, for which the employee receives short-term disability benefits, but are not protected by the FMLA."[1] (*Id*. at 1.) By contrast, "excluded absences," which do not factor into attendance determinations, include absences covered by the collective bargaining agreement (e.g., paid sick leave), the FMLA, company policy, or other applicable law. (*Ibid*.) Kempter had a poor attendance record during her twelve-year tenure at MBT, often due to exhausting her FMLA leave, accumulating 31 steps of corrective action with 10 suspensions. (Grievance Minutes, R.13-4.) At the time of her March 23 25 absence, Kempter was at the fourth disciplinary stage, having been

---

[1]The Family and Medical Leave Act (FMLA) permits 480 hours of leave per year if an eligible employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). If an employee exhausts her FMLA leave, further absences will be considered "chargeable disability absences," per company policy

suspended without pay on November 13, 2008. (Suspension Letter, R.13-6.) Because this was the fifth absence in five years, she was fired.[2]

Kempter filed a written grievance on April 30, 2010, which was denied at all three steps of MBT's internal grievance process. (Grievance Documents, R.15-7.) She subsequently filed this suit, raising claims under the Americans with Disabilities Act (ADA) and state discrimination laws. MBT moved for summary judgment, arguing that as Kempter was unable to perform an essential function of her job (keyboard and mouse work) and could not show the existence of a reasonable accommodation, she was not entitled to the protections of the ADA. As to the reasonable accommodations, MBT explained that 1) Kempter did not request any accommodation other than to type only two hours a day, which was not reasonable, and that 2) there were no vacant positions, since the only possible position also required the ability to type more than two hours a day, and had to be filled by someone else (Keith Hannen) due to a provision in the collective bargaining agreement. In response, Kempter primarily argued that MBT impermissibly fired her because of her disability, not on the basis of attendance. In the fact section of her response, she also argued there were three possible reasonable accommodations. First, she argued for a similar accommodation to Diana Rodabaugh, who also had carpal tunnel syndrome. Rodabaugh testified that as an accommodation under MBT's "Transitional Work Program," MBT had given her a position involving no typing (in fact, "not doing anything" except "sitting there"). (Rodabaugh Deposition

---

[2]Although Kempter's arguments heavily focus on the details of her termination and the attendance policy, these facts were ultimately not relevant to the district court's decision. Likewise, these facts are not relevant to the legal issues in this appeal, except as background.

at 24, R.15-9.)  Second, Kempter argued there was a vacant position as a "technical associate" that required "minimal" typing.  (Hannen Deposition at 30, R.15-10.)  Finally, she also asserted, based on Keith Hannen's testimony, that there was another similar technical associate position that remained vacant.

The district court granted summary judgment for MBT.  The court first held that Kempter's carpal tunnel syndrome did not constitute a disability for the purposes of the ADA, as it is not an impairment that "substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2).  In the alternative, the court held that even if Kempter was disabled, she failed to show that she could perform an essential function of the job, with or without reasonable accommodation.  Kempter argued only that reasonable accommodations existed, and the district court found her proposed accommodations unreasonable.  In particular, the court found that Kempter's own testimony showed that there were no vacant positions at the time of her termination. (Kempter Deposition at 75, R.13-12.)  Declining to exercise supplemental jurisdiction, the district court remanded Kempter's remaining state-law claims to the state court.

Subsequently, MBT moved for costs and attorney's fees, $1,970 and $25,000 respectively. (R.21.)  The district court granted costs, since they are awarded as a matter of course to the prevailing party, Fed. R. Civ. P. 54(d)(1), but declined to award attorney's fees.  While conceding that this was not "a close case," the court found that this was not the type of "extreme" case warranting the sanction of attorney's fees.  The court noted, however, that if a Rule 11 motion for sanctions had been brought, and Kempter, "in the face of such a motion, continued onward," the outcome might have been different.

Kempter appeals the grant of summary judgment. MBT has filed a motion under Federal Rule of Appellate Procedure 38, 28 U.S.C. § 1912, and 28 U.S.C. § 1927 for sanctions, arguing that the appeal is frivolous, contains misrepresentations, and that Kempter was warned twice that her claims had no merit.

## II

We review de novo a district court's grant of summary judgment. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012). Summary judgment is appropriate where the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all of the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013). Nevertheless, the issue of fact must be "genuine." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment will be denied only where the record as a whole could lead a rational trier of fact to find for the nonmoving party. *Ibid.*

The ADA prohibits employment discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Where the ADA claim is based on direct evidence of discrimination, the initial burden is on the plaintiff to show that she (1) has a disability, and (2) is "otherwise qualified" for the position, either "(a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Kleiber v. Honda of Am. Mfg., Inc*, 485 F.3d 862, 869 (6th Cir. 2007) (internal quotation marks omitted); *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.

1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). After the prima facie case is made, the burden shifts to the employer to prove that the "challenged job criterion is essential" (defeating the employee's showing in (b)) or that the "proposed accommodation will impose an undue hardship upon the employer" (defeating the employee's showing in (c)). *Kleiber*, 485 F.3d at 869 (internal quotation marks omitted).[3]

Before proceeding to the analysis, we note that Kempter does not appear to understand the relevant ADA standard. The entire argument section of Kempter's brief below was devoted to arguing that MBT terminated Kempter on the basis of her disability, as shown by both direct and indirect evidence. R.15. This might be enough in a sex or race discrimination case, *see* 42 U.S.C. § 2000e-2, but under the ADA one must also show that the individual is "otherwise qualified," regardless of the motive for firing. In other words, the plaintiff must show that she can perform the essential functions of the job, with or without reasonable accommodations. The district court focused on this "otherwise qualified" aspect of Kempter's claim, leaving the question of whether MBT discriminated on the basis of disability unanswered.

On appeal, Kempter has added a new section to her brief, styled as "Kempter's Retaliation Claim." Appellant's Br. at 24. This "retaliation" claim was not raised below, and the "protected activity" Kempter engaged in (a letter sent from her lawyer five months after termination) cannot

---

[3]While Kempter's argument that she was fired because of her disability and not for violating MBT's attendance policy is very weak, the district court did not decide the issue. Thus, for the sake of argument, we will use only the direct, not indirect, evidence standard. In any case, with respect to essential functions and reasonable accommodation, the two legal standards are similar and the differences are immaterial in this particular case. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 53 (6th Cir. 2004) (laying out both standards).

support a claim of retaliation because it occurred after the adverse employment action. *See* 42

U.S.C. § 12203(a); *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998). Read

generously, however, this section at least provides some argument that there were reasonable

accommodations available    a necessary element of an ADA discrimination claim (assuming the

plaintiff fails to show she can perform the essential functions of the job).

## III

As Kempter does not dispute that typing is an "essential function" of the job of a customer

service representative, she must demonstrate that she could have performed her essential job duties

with a reasonable accommodation. Before the burden shifts to the employer to show an undue

burden, the plaintiff must propose an accommodation that is objectively reasonable to employers in

general. *Walsh v. United Parcel Svc.*, 201 F.3d 718, 726 n.3 (6th Cir. 2000). None of her proposed

accommodations are reasonable.

First, Kempter argues that she could have been accommodated in the same way as Diana

Rodabaugh, who also had carpal tunnel syndrome, by giving her a light-duty, non-typing job. As

Kempter explains, this position was part of MBT's "Transitional Work Program," which gives

injured employees the chance to ease back into regular employment. Employers are not required to

convert "temporary light-duty positions for recuperating employees" into permanent positions.

*Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 730 (6th Cir. 2000). Since Kempter's

doctor's note indicates that her restrictions are "permanent," this was not a reasonable

accommodation for Kempter to propose.[4] If, instead, this light-duty accommodation is considered a permanent position, Kempter has not shown that there was an additional job opening; it is not reasonable for an employer to create a new position to accommodate a disabled employee. *See Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997). In addition, based on Rodabaugh's description of the job, the proposed accommodation is glaringly unreasonable: a job that consists of "not doing anything" serves no function.

Second, Kempter argues that there was a vacant position as a "technical associate," which opened up shortly after her termination and was filled by Keith Hannen. Employers do generally have an obligation to offer as an accommodation positions that are currently unavailable but will become vacant in a reasonable period of time. *Monette*, 90 F.3d at 1187. But the employer need not reassign the employee if the employee is not qualified, or if another employee's rights would be displaced. *Hedrick*, 355 F.3d at 457. Here, the "technical associate" position, although not requiring as much typing as a customer service representative position, still mandated typing and mouse aptitude. Keith Hannen testified that he took a typing test to qualify for the job, and that the job involved repetitive point-and-click mouse operations. Kempter has not provided any factual basis to counter MBT's claim that she would be unqualified for the job. In addition, assignment of the position to Kempter would have violated Hannen's rights under the collective bargaining agreement, since "surplussed" employees (i.e., those affected by downsizing) are supposed to have priority.

---

[4]Kempter protests that the independent evaluator's medical opinion that Kempter was not permanently disabled and could do work must be factored in. But if we accept this position, Kempter should have simply returned to work on March 23 to her old job without accommodation, and we would not have this suit.

Kempter does not dispute this fact, but argues that the ADA trumps collective bargaining rights. But the case cited by Kempter states that "the employer's showing of violation of the rules of a seniority system is by itself ordinarily sufficient" to render the accommodation unreasonable. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 405 (2002). Kempter has not shown any sort of "special circumstances" that would warrant deviating from the general rule. *Ibid*.

Finally, Kempter suggests that there was another unfilled technical associate position that she could have taken. But, as Kempter herself testified, this previous employee's position was vacant only because that position had been "downsized." (Kempter Deposition at 75, R.13-12.) Just as employers are not required to create new positions, they are not required to resurrect old positions.

As none of her accommodations are objectively reasonable, her claim fails.

## IV

Kempter also challenges the district court's alternate holding that she could not be considered disabled in the first place, since her carpal tunnel syndrome was a "limited impairment [that] would not significantly restrict her ability to perform a broad range of jobs in various classes." *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir. 1997). She argues that the 2008 ADA Amendment Act called into question the cases on which the district court relied. Pub. L. No. 110 325, 122 Stat. 3553.

We decline to address this issue. The record on the issue is sparse, and given the weakness of Kempter's proposed accommodations, this case is resolvable without construing the 2008 Amendments.

## V

MBT has moved for sanctions under Federal Rule of Appellate Procedure 38, 28 U.S.C. § 1912, and 28 U.S.C. § 1927. Rule 38 provides that if the court "determines that an appeal is frivolous, it may . . . award just damages and single or double costs to the appellee." Fed. R. App. P. 38. Such sanctions are appropriate if the appeal is "wholly without merit" or the arguments "had no reasonable expectation of altering the district court's judgment based on law or fact." *B & H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 270 (6th Cir. 2008) (internal quotation marks omitted). Bad faith is not "required," but "we will *usually* impose Rule 38 sanctions only where there was some improper purpose, such as harassment or delay, behind the appeal." *Ibid.* (internal quotation marks and alterations omitted; italics in original); *see also Wilton Corp. v. Ashland Casting Corp.*, 188 F.3d 670, 677 (6th Cir. 1999) ("Thus, though we find this appeal to have been filed without delay or bad faith, we do find it to be wholly without merit. . . . Where a client reasonably relies on the advice of counsel, it may be that a sanction for a frivolous appeal is properly imposed on the attorney if the appeal is without merit or substance."). Additionally, sanctions may be warranted where the appellants fail to discuss "key aspects of the [district] court's holding" and "merely reiterate the arguments they made to the district court." *B & H Medical, L.L.C.*, 526 F.3d at 270 (internal quotation marks and alterations omitted). Section 1912 is "similar," *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012), providing that an appellate court "in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." 28 U.S.C. § 1912. Section 1927 provides for sanctions against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.

This case does not involve any serious misrepresentations,[5] vexatious tactics, or other overt signs of bad faith. (*See* Order Denying Fees, R.28 at 7) (noting lack of "vexatious tactics" below). However, Kempter's appeal suffers from such serious factual and legal issues that sanctions are warranted.

In her appeal, Kempter continues to rely on a liberal, and often misleadingly selective, reading of the record. Kempter does not discuss the facts surrounding her dismissal, failing to directly mention — much less justify — her March 23–25 absence. She fails to reference the note from her doctor, Dr. Weiss, recommending permanent restrictions. While passing over these facts, she irrelevantly cites her lawyer's pre-suit demand letter in full. In her reasonable accommodation argument, Kempter neglects to mention that the second supposedly vacant technical associate position Kempter "could have been placed in" had been eliminated two years earlier. She also fails to respond to MBT's arguments that she would not be qualified to perform the technical associate job. She relies solely on Keith Hannen's statement that the amount of typing on a day-to-day basis is "minimal." But MBT argues that the *ability* to type for prolonged periods is essential and, in any case, that the job unquestionably requires significant mouse work — a repetitive task ill-suited to employees with carpal tunnel syndrome.

---

[5]MBT does accuse Kempter of misrepresentation, specifically, in stating that Rodabaugh was fired for her testimony in support of Kempter. According to MBT, Rodabaugh had been on medical leave, but returned to work February 7, 2013. Kempter only weakly replies that: "Just like any other case, the plaintiff has her version of the facts, and the defendants have theirs." This fact is legally unimportant, but its potential misrepresentation is consistent with Kempter's cavalier treatment of the record.

Kempter's appeal also suffers from the failure to properly apply the relevant legal standard. Kempter never lays out the elements of an ADA discrimination claim, and despite the district court's passing on the issue, continues to press her argument that she was fired on the basis of disability. Much of Kempter's appellate brief is lifted from below, and success on the new issue raised the effect of the 2008 ADA Amendments would not be sufficient to warrant reversal. It is true that Kempter added several pages of argument with respect to the only necessary issue: whether MBT could have provided reasonable accommodation.[6] But this added argument was presented in the form of a "retaliation" claim, which had not been raised below, either in briefing or in the complaint. In addition, the only really new argument in this section that the ADA may take precedence over collective bargaining rights is easily refuted. MBT responded with several cases establishing the contrary proposition, to which Kempter has not responded. Indeed, Kempter failed to file a reply brief altogether, a problematic factor given the strength of MBT's response. *Leeds v. City of Muldraugh*, 174 F. App'x 251, 256 (6th Cir. 2006).

Standing alone, these deficiencies might be considered mere "negligence or incompetence." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). However, the district court's warning below that this was not "a close case" and that Rule 11 sanctions might have been justified demonstrates that Kempter's counsel "knowingly disregarded the risk" of pursuing a frivolous appeal. *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 339 (6th Cir. 2012) (internal quotation marks and alteration omitted). In *Scherer*, the district court also

---

[6]Even this new argument section is mostly cut-and-pasted: pages 25 28 of the brief's new section are nearly identical to pages 8 10 of the fact section.

elected not to impose sanctions, but noted that the decisions was a "very close call." *Ibid*. Likewise, counsel in that case evidenced a marked lack of familiarity with the relevant law and failed to file a reply brief. *Ibid*.

Kempter's response to the motion for sanctions serves only to underscore the previously stated inadequacies. The response fails to recognize that the district court granted the motion for summary judgment on two independent grounds, and that reasonable accommodations must be shown to establish a prima facie ADA case. Instead, the response claims that "the district court committed reversible error when granting Defendant's [motion for summary judgment] based on pre-ADAAA case law" and that "asserting her right to challenge a district court opinion on appeal without fear of sanctions is the best way to accomplish meaningful change in civil rights law." Resp. to Mot. for Sanctions at ¶¶ 7, 9. But invoking the high principles of civil-rights litigation and issues of first impression does nothing to change the underlying factual weakness of her claims. Instead of actually defending her proposed accommodations, Kempter's response tersely states that "the District Court Opinion speaks for itself." *Id.* at ¶ 10. Rule 38 and 28 U.S.C. § 1927 do not permit a lawyer, ostrich-like, to continue prosecuting a case while refusing to recognize the relevant legal standard or counter the opposing party's factual arguments.

## VI

For the foregoing reasons, the district court's grant of summary judgment is affirmed. We impose a $5,000 sanction on Kempter's counsel, payable to MBT within 30 days of the issuance of our mandate.